# UNITED STATES *v.* WILLIAMS

No. 94–395.   Argued February 22, 1995—Decided April 25, 1995

GINSBURG, J., delivered the opinion of the Court, in which STEVENS, O'CONNOR, SCALIA, SOUTER, and BREYER, JJ., joined. SCALIA, J., filed a concurring opinion, *post*, p. 541. REHNQUIST, C. J., filed a dissenting opinion, in which KENNEDY and THOMAS, JJ., joined, *post*, p. 541.

*Kent L. Jones* argued the cause for the United States. With him on the briefs were *Solicitor General Days, Assistant Attorney General Argrett, Deputy Solicitor General Wallace, William S. Estabrook,* and *Kevin M. Brown.*

*Philip Garrett Panitz* argued the cause for respondent. With him on the brief was *Gregory Ross Gose.*

JUSTICE GINSBURG delivered the opinion of the Court.

This case presents the question whether respondent Lori Williams, who paid a tax under protest to remove a lien on her property, has standing to bring a refund action under 28 U. S. C. § 1346(a)(1), even though the tax she paid was assessed against a third party. We hold that respondent has standing to sue for a refund. Respondent's suit falls within the broad language of § 1346(a)(1), which gives federal courts jurisdiction to hear "[a]ny civil action against the United States for the recovery of any internal-revenue tax alleged to have been erroneously or illegally assessed or collected," and only a strained reading of other relevant provisions would bar her suit. She had no realistic alternative to payment of a tax she did not owe,[1] and we do not believe Congress intended to leave parties in respondent's position without a remedy.

## I

Before this litigation commenced, respondent Lori Williams and her then-husband Jerrold Rabin jointly owned their home. As part owner of a restaurant, Rabin personally incurred certain tax liabilities, which he failed to satisfy. In June 1987 and March 1988, the Government assessed Rabin close to $15,000 for these liabilities, and thereby placed a lien in the assessed amount on all his property, including his interest in the house. See 26 U. S. C. § 6321 ("If any person liable to pay any tax neglects or refuses to pay the same after demand, the amount . . . shall be a lien in favor of the United States upon all property and rights to property, whether real or personal, belonging to such person."). The Government has not alleged that Williams is personally liable for these or any subsequent assessments.

---

[1] Seeking summary disposition in the District Court, the Government did not contend otherwise or question the District Court's understanding that "the plaintiff here is left without a remedy." App. 22.

Meanwhile, Rabin and Williams divided their marital property in contemplation of divorce. Williams did not have notice of the lien when Rabin deeded his interest in the house to her on October 25, 1988, for the Government did not file its tax lien until November 10, 1988. As consideration for the house, Williams assumed three liabilities for Rabin (none of them tax liabilities) totaling almost $650,000. App. 7–8 (Statement of Uncontroverted Facts presented by attorneys for United States). In the ensuing months, the Government made further assessments on Rabin in excess of $26,000, but did not file notice of them until June 22, 1989.

Williams entered a contract on May 9, 1989, to sell the house, and agreed to a closing date of July 3. *Id.*, at 8. One week before the closing, the Government gave actual notice to Williams and the purchaser of over $41,000 in tax liens which, it claimed, were valid against the property or proceeds of the sale. The purchaser threatened to sue Williams if the sale did not go through on schedule. Believing she had no realistic alternative—none having been suggested by the Government—Williams, under protest, authorized disbursement of $41,937 from the sale proceeds directly to the Internal Revenue Service so that she could convey clear title.

After the Government denied Williams' claim for an administrative refund, she filed suit in the United States District Court for the Central District of California, claiming she had taken the property free of the Government's lien under 26 U. S. C. § 6323(a) (absent proper notice, tax lien not valid against purchaser). To enforce her rights, she invoked 28 U. S. C. § 1346(a)(1), which waives the Government's sovereign immunity from suit by authorizing federal courts to adjudicate "[a]ny civil action against the United States for the recovery of any internal-revenue tax alleged to have been erroneously or illegally assessed or collected." In a trial on stipulated facts, the Government maintained that it was irrelevant whether the Government had a right to Williams' money; her plea could not be entertained, the Govern-

ment insisted, because she lacked standing to seek a refund under § 1346(a)(1).[2] According to the Government, that provision authorizes actions only by the assessed party, *i. e.,* Rabin. The District Court accepted this jurisdictional argument, relying on precedent set in the Fifth and Seventh Circuits.[3]

The United States Court of Appeals for the Ninth Circuit reversed, 24 F. 3d 1143, 1145 (1994), guided by Fourth Circuit precedent.[4] To resolve this conflict among the Courts of Appeals, we granted certiorari, 513 U. S. 959 (1994), and now affirm.

## II

The question before us is whether the waiver of sovereign immunity in § 1346(a)(1) authorizes a refund suit by a party who, though not assessed a tax, paid the tax under protest to remove a federal tax lien from her property. In resolving this question, we may not enlarge the waiver beyond the purview of the statutory language. *Department of Energy* v. *Ohio,* 503 U. S. 607, 614–616 (1992). Our task is to discern the "unequivocally expressed" intent of Congress, construing ambiguities in favor of immunity. *United States* v. *Nordic Village, Inc.,* 503 U. S. 30, 33 (1992) (internal quotation marks omitted).

To fathom the congressional instruction, we turn first to the language of § 1346(a). This provision does not say that only the person assessed may sue. Instead, the statute uses broad language:

---

[2] The dissent, perhaps finding unappealing the Government's defense of unjustified taking, tenders factual inferences, *post,* at 545–546, both unfavorable to Williams and beyond the parties' stipulation of uncontroverted facts. The sole issue in this case, however, is whether one in Williams' situation has standing to sue for a refund, and to that issue the strength of Williams' case on the merits is not relevant.

[3] See *Snodgrass* v. *United States,* 834 F. 2d 537, 540 (CA5 1987); *Busse* v. *United States,* 542 F. 2d 421, 425 (CA7 1976).

[4] See *Martin* v. *United States,* 895 F. 2d 992 (1990).

> "The district courts shall have original jurisdiction, concurrent with the United States Court of Federal Claims, of:
>
> "(1) *Any* civil action against the United States for the recovery of *any* internal-revenue tax alleged to have been *erroneously* or illegally assessed or *collected,* or any penalty claimed to have been *collected* without authority or any sum alleged to have been excessive or in any manner wrongfully *collected* under the internal-revenue laws." 28 U. S. C. § 1346(a) (1988 ed. and Supp. V) (emphasis added).

Williams' plea to recover a tax "erroneously . . . collected" falls squarely within this language.

The broad language of § 1346(a)(1) mirrors the broad common-law remedy the statute displaced: actions of assumpsit for money had and received, once brought against the tax collector personally rather than against the United States. See Ferguson, Jurisdictional Problems in Federal Tax Controversies, 48 Iowa L. Rev. 312, 327 (1963). Assumpsit afforded a remedy to those who, like Williams, had paid money they did not owe—typically as a result of fraud, duress, or mistake. See H. Ballantine, Shipman on Common-Law Pleading 163–164 (3d ed. 1923). Assumpsit refund actions were unavailable to volunteers, a limit that would not have barred Williams because she paid under protest. See *Philadelphia* v. *Collector,* 5 Wall. 720, 731–732 (1867) ("Where the party voluntarily pays the money, he is without remedy; but if he pays it by compulsion of law, or under protest, or with notice that he intends to bring suit to test the validity of the claim, he may recover it back . . . .").

### III

Acknowledging the evident breadth of § 1346(a)(1), the Government relies on the interaction of three other provisions to narrow the waiver of sovereign immunity. The Government argues: Under 26 U. S. C. § 7422, a party may

not bring a refund action without first exhausting administrative remedies; under 26 U. S. C. § 6511, only a "taxpayer" may exhaust; under 26 U. S. C. § 7701(a)(14), Williams is not a taxpayer.

It is undisputed that § 7422 requires administrative exhaustion.[5] If Williams is eligible to exhaust, she did so by filing an administrative claim. But to show that Williams is not eligible to exhaust, the Government relies first on 26 U. S. C. § 6511(a), which provides in part:

> "(a) Period of limitation on filing claim
>
> "Claim for credit or refund of an overpayment of any tax imposed by this title in respect of which tax the taxpayer is required to file a return *shall be filed by the taxpayer* within 3 years from the time the return was filed or 2 years from the time the tax was paid, whichever of such periods expires the later, or if no return was filed by the taxpayer, within 2 years from the time the tax was paid." (Emphasis added.)

From the statute's use of the term "taxpayer," rather than "person who paid the tax," the Government concludes that only a "taxpayer" may file for administrative relief under § 7422, and thereafter pursue a refund action under 28 U. S. C. § 1346(a)(1).[6] Then, to show that Williams is not

---

[5] Section 7422(a) provides in relevant part:

"No suit or proceeding shall be maintained in any court for the recovery of any internal revenue tax alleged to have been erroneously or illegally assessed or collected, or of any penalty claimed to have been collected without authority, or of any sum alleged to have been excessive or in any manner wrongfully collected, until a claim for refund or credit has been duly filed with the Secretary, according to the provisions of law in that regard, and the regulations of the Secretary established in pursuance thereof."

[6] Title 26 U. S. C. § 6532(a)(1), governing the time to file a refund suit in court, reads in part:

"No suit or proceeding under section 7422(a) for the recovery of any internal revenue tax, penalty, or other sum, shall be begun before the expira-

a "taxpayer," the Government relies on 26 U. S. C. § 7701 (a)(14), which defines "taxpayer" as "any person subject to any internal revenue tax." According to the Government, a party who pays a tax is not "subject to" it unless she is the one assessed.

The Government's argument fails at both statutory junctures. First, the word "taxpayer" in § 6511(a)—the provision governing administrative claims—cannot bear the weight the Government puts on it. This provision's plain terms provide only a deadline for filing for administrative relief,[7] not a limit on who may file. To read the term "taxpayer" as implicitly limiting administrative relief to the party assessed is inconsistent with other provisions of the refund scheme, which expressly contemplate refunds to parties other than the one assessed. Thus, in authorizing the Secretary to award a credit or refund "[i]n the case of any overpayment," 26 U. S. C. § 6402(a) describes the recipient not as the "taxpayer," but as "the person who made the overpayment." Similarly, in providing for credits and refunds for sales taxes and taxes on tobacco and alcohol, 26 U. S. C. § 6416(a) and 26 U. S. C. § 6419(a) describe the recipient as "the person who paid the tax."

tion of 6 months from the date of filing the claim required under such section unless the Secretary renders a decision thereon within that time, nor after the expiration of 2 years from the date of mailing by certified mail or registered mail by the Secretary to the taxpayer of a notice of the disallowance of the part of the claim to which the suit or proceeding relates."

[7] As a statute of limitations, § 6511(a) does narrow the waiver of sovereign immunity in § 1346(a)(1) by barring the tardy. See *United States* v. *Dalm*, 494 U. S. 596, 602 (1990) ("Read together, the import of these sections [§§ 1346(a)(1), 7422(a), 6511(a)] is clear: unless a claim for refund of a tax has been filed within the time limits imposed by § 6511(a), a suit for refund, regardless of whether the tax is alleged to have been 'erroneously,' 'illegally,' or 'wrongfully collected,' §§ 1346(a)(1), 7422(a), may not be maintained in any court.").

Further, even if, as the Government contends, only "taxpayers" could seek administrative relief under § 6511, the Government's claim that Williams is not at this point a "taxpayer" is unpersuasive. Section 7701(a)(14), defining "taxpayer," informs us that "[w]hen used in [the Internal Revenue Code], where not otherwise distinctly expressed or manifestly incompatible with the intent thereof, . . . [t]he term 'taxpayer' means any person subject to any internal revenue tax."[8] That definition does not exclude Williams. The Government reads the definition as if it said "any person who is assessed any internal revenue tax," but these are not Congress' words. The general phrase "subject to" is broader than the specific phrase "assessed" and, in the tax collection context before us, we think it is broad enough to include Williams. In placing a lien on her home and then accepting her tax payment under protest, the Government surely subjected Williams to a tax, even though she was not the assessed party.

In support of its reading of "taxpayer," the Government cites our observation in *Colorado Nat. Bank of Denver* v. *Bedford,* 310 U. S. 41, 52 (1940), that "[t]he taxpayer is the person ultimately liable for the tax itself." The Government takes this language out of context. We were not interpreting the term "taxpayer" in the Internal Revenue Code, but deciding whether a state tax scheme was consistent with federal law. In particular, we were determining whether Colorado had imposed its service tax on a bank's customers (which was consistent with federal law) or on the bank itself (which was not). Though the bank collected and paid the tax, its incidence fell on the customers. Favoring substance over form, we said: "The person liable for the tax [the bank], primarily, cannot always be said to be the real taxpayer.

---

[8] The Treasury's regulation, 26 CFR § 301.7701–16 (1994), adds nothing to the statute; in particular, the regulation does not ascribe any special or limiting meaning to the statute's "subject to" terminology.

The taxpayer is the person ultimately liable for the tax itself." *Ibid.* As a result, we determined that the tax had been imposed on the customers rather than the bank. If *Colorado Nat. Bank* is relevant at all, it shows our preference for commonsense inquiries over formalism—a preference that works against the Government's technical argument in this case.

## IV

As we have just developed, 28 U. S. C. § 1346(a)(1) clearly allows one from whom taxes are erroneously or illegally collected to sue for a refund of those taxes. And 26 U. S. C. § 6402(a), with similar clarity, authorizes the Secretary to pay out a refund to "the person who made the overpayment." The Government's strained reading of § 1346(a)(1), we note, would leave people in Williams' position without a remedy. See *supra,* at 529, n. 1. This consequence reinforces our conclusion that Congress did not intend refund actions under § 1346(a)(1) to be unavailable to persons situated as Lori Williams is. Though the Government points to three other remedies, none was realistically open to Williams. Nor would any of the vaunted remedies be available to others in her situation. See, *e. g., Martin* v. *United States,* 895 F. 2d 992 (CA4 1990); *Barris* v. *United States,* 851 F. Supp. 696 (WD Pa. 1994); *Brodey* v. *United States,* 788 F. Supp. 44 (Mass. 1991) (all ordering refunds of amounts erroneously collected to the people who paid those amounts).

If the Government has not levied on property—as it has not levied on Williams' home—the owner cannot challenge such a levy under 26 U. S. C. § 7426. Nor would an action under 28 U. S. C. § 2410(a)(1) to quiet title afford meaningful relief to someone in Williams' position. The first lien on her property, for nearly $15,000, was filed just six months before the closing; and liens in larger sum—over $26,000, out of $41,937—were filed only 11 days before the closing. (Williams did not receive actual notice of *any* of the liens until barely a week before the closing.) She simply did not have

time to bring a quiet title action. She urgently sought to sell the property, but a sale would have been difficult before a final judgment in such litigation, which could have been protracted. In contrast, a refund suit would allow her to sell the property and simultaneously pay off the lien, leaving her free to litigate with the Government without tying up her real property, whose worth far exceeded the value of the Government's liens.

Nor may Williams and persons similarly situated rely on § 6325(b)(3) for such an arrangement. This provision permits the Government to discharge a lien on property if the owner sets aside a fund that becomes subject to a new lien; the parties then can litigate the propriety of the new lien after the property is sold. However, § 6325(b)(3) and its implementing regulation render this remedy doubtful indeed, for it is available only at the Government's discretion. See § 6325(b)(3) ("[T]he Secretary *may* issue a certificate of discharge [of a federal tax lien] of any part of the property subject to the lien if such part of the property is sold and, *pursuant to an agreement with the Secretary,* the proceeds of such sale are to be held, as a fund subject to the liens and claims of the United States, in the same manner and with the same priority as such liens and claims had with respect to the discharged property.") (emphasis added); 26 CFR § 301.6325–1(b)(3) (1994) ("A district director [of the Internal Revenue Service] may, *in his discretion,* issue a certificate of discharge of any part of the property subject to a [tax lien] if such part of the property is sold and, *pursuant to a written agreement with the district director,* the proceeds of the sale are held, as a fund subject to the liens and claims of the United States, in the same manner and with the same priority as the lien or claim had with respect to the discharged property.") (emphasis added).

So far as the record shows, the Government did not afford Williams an opportunity to substitute a fund pursuant to

§ 6325(b)(3).[9] This omission is not surprising, for on the Government's theory of who may sue under § 1346(a)(1), the Government had scant incentive to agree to such an arrangement with people caught in Williams' bind. Under § 6325(b)(3), the Government does not receive cash, but another lien (albeit one on a fund). In contrast, if the Government resists a § 6325(b)(3) agreement, it is likely to get cash immediately: property owners eager to remove a tax lien will have to pay, as did Williams. If they may not sue under § 1346(a)(1), their payment is nonrefundable. An agreement pursuant to § 6325(b)(3) thus dependent on the district director's grace cannot sensibly be described as available to Williams.

We do not agree with the Government that, if § 1346(a)(1) authorizes some third-party suits, the levy, quiet title, and separate-fund remedies become superfluous. Section 1346(a)(1) is a postdeprivation remedy, available only if the taxpayer has paid the Government in full. *Flora* v. *United States*, 362 U. S. 145 (1960). The other remedies offer predeprivation relief. The levy provision in 26 U. S. C. § 7426(a)(1) is available "without regard to whether such property has been surrendered to or sold by the Secretary." Likewise, 28 U. S. C. § 2410 allows a property owner to have a lien discharged without ever paying the tax. Under 26 U. S. C. § 6325(b)(3), the lien on the property is removed in exchange for a new lien, rather than a cash payment.

## V

Finally, the Government urges that allowing Williams to sue will violate the principle that parties may not challenge

---

[9] The dissent asserts, regarding § 6325(b)(3), that Williams cannot complain in court without exhausting her administrative remedy. *Post*, at 547–548. But § 6325(b)(3) presents no question of administrative exhaustion as a prelude to judicial review, for that "remedy" lies entirely within the Government's discretion.

the tax liabilities of others. According to the Government, undermining this principle will lead to widespread abuse: In particular, parties will volunteer to pay the tax liabilities of others, only to seek a refund once the Government has ceased collecting from the real taxpayer.

Although parties generally may not challenge the tax liabilities of others, this rule is not unyielding. A taxpayer's fiduciary may litigate the taxpayer's liability, even though the fiduciary is not herself liable. See 26 CFR § 301.6903–1(a) (1994) (the fiduciary must "assume the powers, rights, duties, and privileges of the taxpayer with respect to the taxes imposed by the Code"); *ibid.* ("The amount of the tax or liability is ordinarily not collectible from the personal estate of the fiduciary but is collectible from the estate of the taxpayer . . . ."); 15 J. Mertens, Law of Federal Income Taxation § 58.08 (1994) (refund claims for decedents filed by executor, administrator, or other fiduciary of estate). Similarly, certain transferees may litigate the tax liabilities of the transferor; if the transfer qualifies as a fraudulent conveyance under state law, the Code treats the transferee as the taxpayer, see 26 U. S. C. § 6901(a)(1)(A); 5 J. Rabkin & M. Johnson, Federal Income, Gift and Estate Taxation § 73.10, pp. 73–82 to 73–87 (1992), so the transferee may contest the transferor's liability either in tax court, see 14 Mertens, *supra*, § 53.50, or in a refund suit under § 1346(a)(1). See *id.*, § 53.55. Furthermore, the Court has allowed a refund action by parties who were not assessed, albeit under a different statute. See *Stahmann* v. *Vidal,* 305 U. S. 61 (1938) (cotton producers could bring a refund action for a federal cotton ginning tax if they had paid the tax, even though the tax was assessed against ginners rather than producers).

The burden on the principle that a party may not challenge the tax liability of another is mitigated, moreover, because Williams' main challenge is to the existence of a lien against *her* property, rather than to the underlying assessment on

her husband. That is, her primary claim is not that *her husband* never owed the tax[10]—a matter that, had she not paid these taxes herself under the duress of a lien, would not normally be her concern. Rather, she asserts that the Government has attached a lien on the wrong property, because the house belongs to her rather than to him—a scenario which leaves her "subject to" the tax in a meaningful and immediate way.

We do not find disarming the Government's forecast that allowing Williams to sue will lead to rampant abuse. The Government's posited scenario seems implausible; it is not clear what incentive a volunteer has to pay someone else's taxes as a way to help that person evade them. Nor does the Government report that such schemes are commonplace among the millions of taxpayers in the Fourth and Ninth Circuits, Circuits that permit persons in Williams' position to bring refund suits. Furthermore, our holding does not authorize the host of third-party challenges the Government fears. Williams paid under protest, solely to gain release of the Government's lien on her property—a lien she attacked as erroneously maintained. We do not decide the circumstances, if any, under which a party who volunteers to pay a tax assessed against someone else may seek a refund under § 1346(a).

---

[10] On motion for summary judgment in District Court, Williams did challenge her husband's liability as well. See Plaintiff's Notice of Motion and Cross-Motion for Summary Judgment 13. However, counsel retreated from this claim at oral argument. Tr. of Oral Arg. 36 ("We're not arguing that she's going to go into court and litigate the liability of her ex-husband."); *id.*, at 37 ("[W]e're not saying that she wa[nts] [to] go into court and litigate his tax liability. That's his problem, not hers."). Moreover, to affirm the Ninth Circuit's judgment, we can rely solely on Williams' standing to challenge the lien, regardless of whether she has standing to challenge the underlying assessment on her husband. Accordingly, we need not resolve whether Williams is still asserting her challenge to the underlying assessment, let alone whether she has standing to do so.

*    *    *

The judgment of the United States Court of Appeals for the Ninth Circuit is

*Affirmed.*

JUSTICE SCALIA, concurring.

I join the opinion of the Court, except insofar as it holds that Williams is a "taxpayer" within the meaning of 26 U. S. C. §§ 6511(a) and 7701(a)(14), see *ante,* at 534–536. That seems to me unnecessary to the decision, since § 6511(a), an administrative exhaustion provision, has too remote a bearing upon § 1346(a)(1), the jurisdictional provision at issue, to create by implication the significant limitation upon jurisdiction that the Government asserts.

I acknowledge the rule requiring clear statement of waivers of sovereign immunity, see *post,* at 544 (dissenting opinion), and I agree that the rule applies even to determination of the scope of explicit waivers. See, *e. g., United States* v. *Nordic Village, Inc.,* 503 U. S. 30, 34 (1992). The rule does not, however, require explicit waivers to be given a meaning that is implausible—which would in my view be the result of restricting the unequivocal language of § 1346(a)(1) by reference to § 6511(a). "'The exemption of the sovereign from suit involves hardship enough where consent has been withheld. We are not to add to its rigor by refinement of construction where consent has been announced.'" *United States* v. *Aetna Casualty & Surety Co.,* 338 U. S. 366, 383 (1949) (quoting *Anderson* v. *Hayes Constr. Co.,* 243 N. Y. 140, 147, 153 N. E. 28, 29–30 (1926) (Cardozo, J.)).

CHIEF JUSTICE REHNQUIST, with whom JUSTICE KENNEDY and JUSTICE THOMAS join, dissenting.

The Court, in an unusual departure from the bedrock principle that waivers of sovereign immunity must be "unequivocally expressed," holds that respondent may sue for a refund of a tax which was not assessed against her. In so doing, it

outlines in some detail what it conceives to be the equities of respondent's situation—a factor not usually of great significance in construing the Internal Revenue Code. I believe that the Court's picture of the equities is misleadingly inaccurate, and that its effort to stretch the law to avoid these perceived inequities is quite contrary to established doctrine.

The legal question at hand is whether the Government has waived its sovereign immunity in 28 U. S. C. § 1346(a)(1) to authorize respondent, who conceded that she "is not the taxpayer," App. 16, to file a refund suit. In answering that question, it must be remembered that § 1346(a)(1) is "a jurisdictional provision which is a keystone in a carefully articulated and quite complicated structure of tax laws." *Flora* v. *United States*, 362 U. S. 145, 157 (1960). Section "1346(a)(1) must be read in conformity with other statutory provisions [26 U. S. C. §§ 7422(a) and 6511(a)] which qualify a taxpayer's right to bring a refund suit." *United States* v. *Dalm*, 494 U. S. 596, 601–602 (1990).

Section 1346(a)(1) provides:

> "The district courts shall have original jurisdiction, concurrent with the United States Court of Federal Claims, of:
>
> "(1) Any civil action against the United States for the recovery of any internal-revenue tax alleged to have been erroneously or illegally assessed or collected, or any penalty claimed to have been collected without authority or any sum alleged to have been excessive or in any manner wrongfully collected under the internal-revenue laws." 28 U. S. C. § 1346(a)(1) (1988 ed. and Supp V).

The jurisdiction conferred by § 1346(a)(1) is limited by 26 U. S. C. § 7422(a). Like § 1346(a)(1), § 7422(a) contains no language limiting a refund suit to the "taxpayer," but its "express language . . . conditions a district court's authority

to hear a refund suit." *Dalm, supra,* at 609, n. 6. It requires that "a claim for refund or credit [first be] filed with the Secretary, according to the provisions of law in that regard." 26 U. S. C. § 7422(a). There are two "provisions of law" dealing with such claims. Title 26 U. S. C. § 6511(a) provides in part that a

> "[c]laim for credit or refund of an overpayment of any tax imposed by this title in respect of which tax the *taxpayer* is required to file a return shall be filed by the *taxpayer* within 3 years from the time the return was filed or 2 years from the time the tax was paid." (Emphasis added.)

Title 26 U. S. C. § 6532(a), which imposes a period of limitations on suits for refunds in court and is entitled "Suits by *taxpayers* for refund," states that

> "[n]o suit or proceeding under section 7422(a) . . . shall be begun before the expiration of 6 months from the date of filing the claim required under such section . . . , nor after the expiration of 2 years from the date of mailing by certified mail or registered mail by the Secretary to the *taxpayer* of a notice of the disallowance" (emphasis added).

Both §§ 6511(a) and 6532(a) clearly are limited to the "taxpayer," and the term "taxpayer" is in turn defined in § 7701(a)(14) to mean "any person subject to any internal revenue tax." Reading these provisions as a whole, the conclusion is inescapable that only a "taxpayer" (§ 7701(a)(14)) who has filed a timely claim for refund (under § 6511(a)) and a timely suit for refund (under § 6532(a)) is authorized to maintain a suit for refund in any court (§ 7422(a)) for an "erroneously or illegally assessed or collected" tax (28 U. S. C. § 1346(a)(1)).

The Court describes 26 U. S. C. § 6511(a) as providing "only a deadline for filing for administrative relief, not a limit on who may file." *Ante,* at 534. But the "plain terms" of

§ 6511(a), *ibid., do* impose such a limit—a refund claim may be filed only "by the taxpayer." The Court discounts the notion that the term "taxpayer" limits administrative relief to the party assessed by concluding that such a construction "is inconsistent with other provisions of the refund scheme." *Ibid.* The "other provisions" cited by the Court, however, are in no way inconsistent with the above construction of § 6511(a): the fact that the Secretary is authorized to refund any overpayment to "the person who made the overpayment," § 6402(a), or to "the person who paid the tax," §§ 6416(a), 6419(a), does not mean that such a person may bring suit if she disagrees with the Secretary's calculation of the amount of the overpayment. And even if such an inconsistency did exist, an "inconsistency" is not enough to carry the day when dealing with a waiver of sovereign immunity; "inconsistency" simply means ambiguity, and because a waiver of sovereign immunity must be "'unequivocally expressed,'" any ambiguity is construed in favor of immunity. *United States* v. *Nordic Village, Inc.,* 503 U. S. 30, 33 (1992).

The Court proceeds to argue that, even if only "taxpayers" could seek administrative relief under § 6511, respondent qualifies as a "taxpayer." *Ante,* at 535. That term is defined in the Code as "any person subject to any internal revenue tax." § 7701(a)(14). The Court says this phrase is "broad enough to include [respondent]" because the Government "place[d] a lien on her home and then accept[ed] her tax payment." *Ante,* at 535. This is remarkably imprecise reasoning.

Respondent was subjected to a tax *lien,* but this does not mean she was "subject to any internal revenue tax" in the normal sense of that phrase as used in the Code. The tax was assessed against Rabin, not respondent, and respondent has equivocated as to whether she is simply challenging the lien or also challenging Rabin's underlying tax assessment. The underlying tax, and the lien to enforce liability for that tax, are obviously two different things. One may have a tax

assessed against him, and if he pays it in a timely manner he will never be subject to a lien. Conversely, one against whom the tax was not assessed may nonetheless be subject to a lien to enforce collection of that tax. The Court says it will decide here only the challenge to the lien, thereby leaving the tax totally unchallenged in this proceeding. *Ante*, at 539–540, and n. 10. This is quite contrary to the language quoted above, which allows only the person "subject to any internal revenue *tax*" to file the claim for refund which is the necessary prerequisite for bringing a refund suit under § 1346(a)(1).

The Court believes its position is reinforced by its conclusion that respondent is left without a remedy if she cannot bring a refund suit under § 1346(a)(1). Equities ordinarily do not assume such a dominant role when dealing with questions of sovereign immunity, but if they are to play that role, the equities ought to be those which can be confirmed on the record before us.

The undisputed facts of record which evoke the Court's sympathy are these. Rabin and respondent owned the property in question as joint tenants. In June 1987, and in March 1988, the Government made federal employment tax assessments totaling nearly $15,000 against Rabin. A federal tax lien securing the taxes and interest owed by Rabin arose "at the time the assessment [was] made," 26 U. S. C. § 6322, and reached "all property and rights to property, whether real or personal, belonging to" Rabin at that time. § 6321. In October 1988, Rabin and respondent entered into a "transfer agreement," whereby Rabin agreed to convey his interest in the property to respondent and to indemnify her for the payment of any liens on the property. Rabin transferred his interest in the property to respondent by executing a quitclaim deed. The deed, recorded nearly three months before any divorce proceedings had commenced, described respondent as "'an unmarried woman.'" App. 14. This misrepresentation—stating that respondent was "'an

unmarried woman'" at the time of the transfer—raises the question whether the property was conveyed to respondent "in contemplation of divorce," as the Court says, *ante*, at 530, or whether it was done in an attempt to shield Rabin's assets from the tax lien. In November 1988, the Government recorded notice of the federal tax lien. Respondent commenced divorce proceedings against Rabin in January 1989, and in May 1989, while the divorce petition was pending, respondent entered into an agreement to sell the property. In June 1989, the Government filed notice of additional tax liens, including a lien in respondent's name as nominee, agent, alter ego, and holder of a beneficial interest in the property for Rabin. The closing date for the sale of the property was July 3, 1989.

Respondent thus faced a situation not uncommon to those who seek to transfer a clear title to real property: Her property was subject to federal tax liens. But despite the Court's suggestion to the contrary, respondent clearly had available to her at least two remedies. She could have brought an action to "quiet title" under 28 U.S.C. §2410(a)(1), or she could have sought from the Secretary a "certificate of discharge" of the property under 26 U.S.C. §6325(b)(3).

The Court, relying on respondent's bald assertion that she had no notice of the liens until the week before the closing, concludes that a quiet title action under §2410(a) would not have afforded respondent meaningful relief because only "a refund suit would allow her to sell the property and simultaneously pay off the lien, leaving her free to litigate with the Government without tying up her real property." *Ante*, at 537. This simply begs the question. Obviously, a quiet title action brought at the time respondent agreed to sell the property could not have proceeded to judgment before the closing date, but that is true of lawsuits to quiet title against all sorts of other liens that may prevent the conveyance of clear title. The existence of outstanding liens on property

is a fact of life, and heretofore lienors—least of all the United States—have not been required to afford the legal equivalent of "same day service" to finally adjudicate title before the closing date.

Respondent was not left only with the remedy of a quiet title action; she could have sought from the Secretary a "certificate of discharge" of the property under 26 U. S. C. § 6325(b)(3) by agreeing to hold the proceeds of the sale of the property "as a fund subject to the liens and claims of the United States," with the propriety of the liens to be litigated in a subsequent action under § 7426(a)(3). The Court finds this remedy inadequate because it was a "doubtful" remedy upon which respondent could not "rely," since the certificate of discharge could issue only in the exercise of the Secretary's discretion. *Ante,* at 537. That the Secretary must exercise discretion does not make § 6325(b)(3) a "doubtful" remedy. Congress appropriately granted the Secretary discretion to determine, on a case-by-case basis, whether the proceeds from the sale of property will be sufficient to protect the Government's tax lien. And because the worth of respondent's property "far exceeded the value of the Government's liens," *ibid.,* the Secretary most likely would have issued a certificate of discharge in this case. But respondent never sought to invoke this remedy, and the cases are legion holding that a person may not claim an administrative remedy was inadequate if she never sought to invoke it. See, *e. g., McGee* v. *United States,* 402 U. S. 479, 483 (1971) (a Selective Service registrant may not complain in court if the registrant "has failed to pursue normal administrative remedies and thus has sidestepped a corrective process which might have cured or rendered moot the very defect later complained of"); *Geo. F. Alger Co.* v. *Peck,* 74 S. Ct. 605, 606–607, 98 L. Ed. 1148, 1150 (1954) (Reed, J., in chambers) (a company may not complain in court when it failed to take advantage of an available administrative remedy, even though that remedy may "cause inconvenience and ex-

pense"); cf. *McCarthy* v. *Madigan,* 503 U. S. 140, 145 (1992) (exhaustion of administrative remedies "appl[ies] with particular force when the action under review involves exercise of the agency's discretionary power or when the agency proceedings in question allow the agency to apply its special expertise") (citing *McKart* v. *United States,* 395 U. S. 185, 194 (1969)).

To make a bad matter worse, the Court faults the Government for not "afford[ing respondent] an opportunity" to pursue this remedy. *Ante,* at 537. This makes one wonder whether we are entering an era where internal revenue agents must give warnings to delinquent taxpayers and lienees analogous to the warnings required in criminal cases by our decision in *Miranda* v. *Arizona,* 384 U. S. 436 (1966). Certainly the Court has never so held before, and one may hope that it would not so hold in the future. Indeed, since respondent concedes in her brief that the Government was not required to tell her about the discretionary relief available, Brief for Respondent 20, it is surprising to see the Court suggest to the contrary.

If this case involved the interpretation of a statute designed to confer new benefits or rights upon a class of individuals, today's decision would be more understandable, since such a statute would be "entitled to a liberal construction to accomplish its beneficent purposes." *Cosmopolitan Shipping Co.* v. *McAllister,* 337 U. S. 783 (1949) (construing the Jones Act); see also *Atchison, T. & S. F. R. Co.* v. *Buell,* 480 U. S. 557, 562 (1987) (stating that the Federal Employers' Liability Act is a "broad remedial statute" which must be given a "'liberal construction'"). But it would surely come as news to the millions of taxpayers in this country that the Internal Revenue Code has a "beneficent purpose" as far as they are concerned. It does not, and the Court is mistaken to decide this case in a way that can only be justified if it does.