**CITY OF RICHMOND, KENTUCKY**
Plaintiff,

v.

**UNITED STATES of America,**
Defendant.

**No. 5:03–464–JMH.**

United States District Court,
E.D. Kentucky.

Nov. 15, 2004.

Garrett T. Fowles, Richmond, KY, for Plaintiff.

Aneida P. Winston, Stuart M. Fischbein, U.S. Department of Justice, Washington, DC, for Defendant.

## MEMORANDUM OPINION AND ORDER

HOOD, District Judge.

This matter is before the Court on Plaintiff's motion for summary judgment [Record No. 10]. Defendant responded [Record No. 12] and also moved for summary judgment [Record No. 13]. The time for responsive motions has elapsed and the matter is ripe for decision.

### FACTUAL BACKGROUND

In the spring of 2002, the plaintiff, City of Richmond ("City"), sought to acquire a tract of property as part of the Linden Street Redevelopment Project. Through this community development project, the City planned to purchase various tracts of property for the construction of new sin-

gle-family homes for low-income residents. One of the tracts of property (the "Property") which the City wished to purchase was owned by Jimmy D. Kelly and Billy Jean Kelly, husband and wife, as joint tenants with rights of survivorship. The encumbrances on this tract of land are what sparked the controversy between the parties in this case.

The Property was appraised at a value of $33,500.00. The Kelly's agreed to sell the Property to the City for that amount.[1] When city representatives examined the title to the Property, the record of the Madison County Clerk indicated that it was encumbered by two separate, yet active encumbrances: (1) a mortgage lien against the Property and two other tracts owned by the Kelly's in the principal amount of $108,594.74 to the Bank of Mount Vernon, which was recorded on November 5, 1999; and (2) a federal tax lien with respect to Jimmy D. Kelly in the amount of $27,927.72, which was recorded in 2001. The Kelly's authorized the City to deal directly on their behalf with the bank and the defendant, Internal Revenue Service ("IRS"), in procuring lien releases and in making payment for the property.

Believing that the IRS would have lien priority over the bank's mortgage lien, the City's mayor and the City's city manager contacted the IRS and spoke to an IRS employee named Larry Vincent. Mr. Vincent confirmed that the IRS would have priority over the mortgage lien and provided the city manager with an amount necessary to satisfy the tax lien. The City sent a check in that amount to the IRS and upon receipt of the payment, the IRS issued a certificate of release of the tax lien

on September 13, 2002. The City never recorded the release.

The city manager attempted to contact the Bank of Mount Vernon with the intention of paying the bank the balance of the proceeds for the Property (the purchase price less the amount paid to the IRS) in order to secure a release of the bank's mortgage lien against the Property. However, the city manager learned that the Bank of Mount Vernon was no longer in existence.

The city manager then contacted the bank's successor in interest, the Premier Mortgage Company, only to find out that the $108,594.74 note (which was entirely unpaid) and the mortgage lien had been assigned to Ikerd Management Corporation ("Ikerd"). This assignment, however, had never been recorded. Mr. Jerry Ikerd, the president of Ikerd, stated that Ikerd's position was that the mortgage lien in its hands was superior to the federal tax lien, because the mortgage was recorded prior to the tax lien. Ikerd refused to release the indebtedness without the entire purchase price.

Counsel for the City agreed that Ikerd's mortgage was prior to the tax lien and the City then paid Ikerd the entire purchase price. In October 2002, the City contacted the IRS by letter requesting that the IRS reimburse the City of the amount it had earlier sent in satisfaction of the tax lien.

The IRS refused to reimburse the City for the full amount, taking the position that because Ikerd had not recorded its assignment of the mortgage, the mortgage was not prior to the tax lien. However, the IRS agreed that because the tax lien secured the tax liability of Jimmy D. Kelly and not his wife, the tax lien would extend

---

1. The defendant argues that the plaintiff originally valued the property as $33,000, not $33,500. (Def.'s Mot. for Summ. J. at 3.) This disagreement in value does not affect the Court's decision in this case because the Court bases its decision on subject matter jurisdiction.

only to his one-half interest in the property. Accordingly, the IRS retained only half of the proceeds of the sale. The IRS retained $16,500.00 (half of $33,000.00), since the City's request for payment indicated the value of the property was $33,000.00, not $33,500.00 as indicated in the complaint.[2] The IRS refunded the difference of the amount they stated was previously paid by the City ($26,817.00) and Jimmy D. Kelly's one-half interest of the $33,000.00 purchase price ($16,500.00). The IRS sent a partial refund of $10,317.00 to the City, retaining $16, 500 that the City had previously paid.

The City filed suit under 28 U.S.C. § 1346(a)(1), seeking a refund of $16,500.00,[3] the remaining balance of the amount it paid for the release of the tax lien, on the assertion that the mortgage was recorded prior to the tax lien.

## STANDARD OF REVIEW

Both parties move for summary judgment because each agrees that there are no issue of material fact and that this matter involves only issues of law [Record No. 8]. A grant of summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c).

The moving party bears the initial burden to show the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). This burden is met simply by showing the court that there is an absence of evidence on a material fact on which the nonmoving party has the ultimate burden of proof at trial. Id. at 325, 106 S.Ct. 2548. The burden then shifts to the nonmoving party to "come forward with some probative evidence to support its claim." Lansing Dairy, Inc. v. Espy, 39 F.3d 1339, 1347 (6th Cir.1994). A material fact is one that may affect the outcome of the issue at trial, as determined by substantive law. A genuine dispute exists on a material fact, and thus summary judgment is improper, if the evidence shows "that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); Summers v. Leis, 368 F.3d 881, 885 (6th Cir.2004).

The judge's function is not to weigh the evidence, but to decide whether there are genuine issues for trial. Anderson, 477 U.S. at 249, 106 S.Ct. 2505; Multimedia 2000, Inc. v. Attard, 374 F.3d 377, 380 (6th Cir.2004). The evidence should be construed in the light most favorable to the nonmoving party, when deciding whether there is enough evidence to overcome summary judgment. Anderson, 477 U.S. at 255, 106 S.Ct. 2505; Summers, 368 F.3d at 885.

## DISCUSSION

Plaintiff argues that summary judgment should be granted because the tax lien on the Property was subordinate to the mortgage lien, regardless of the fact that the assignment of the mortgage lien was never recorded. (Pl.'s Mot. for Summ. J.) Defen-

---

**2.** In the City's memorandum in support of its motion for summary judgment, it was stated that the amount the IRS retained was $16,750.00, although the exhibits in the original complaint list the amount as $16,500.00.

**3.** The original complaint by the City states the amount that they wish to be refunded is $16,500.00. Yet the Memorandum for Summary Judgment states the amount they seek is $16,750.00.

dant argues that this Court does not have jurisdiction to hear the matter because the United States has not consented to waive its sovereign immunity, and alternatively, that if there is jurisdiction, that the tax lien was not subordinate because the assignment of the mortgage lien was never recorded. (Def.'s Mot. for Summ. J.) The Court holds that it lacks subject matter jurisdiction to entertain this suit because the United States has not waived sovereign immunity and thus, the Court does not reach the merits of whether the tax lien was subordinate to the mortgage lien.

▇ The United States, as a sovereign, may not be sued without its consent. Without consent, a complaint against the United States must be dismissed for lack of subject matter jurisdiction. *United States v. Mitchell,* 463 U.S. 206, 212, 103 S.Ct. 2961, 77 L.Ed.2d 580 (1983). Congress can consent to suit by expressly waiving immunity in a statute, as it has done in 28 U.S.C. § 1346(a)(1). Plaintiff stated in the complaint that jurisdiction was predicated upon 28 U.S.C. § 1346. (Pl.'s Compl. at 1.) Section 1346(a)(1) states that a district court has jurisdiction over a "civil action against the United States for the recovery of any internal-revenue tax alleged to have been erroneously or illegally assessed or collected . . . without authority or any sum alleged to have been excessive or in any manner wrongfully collected under the internal-revenue laws." Section 1346(a)(1), combined with 26 U.S.C. § 7422 (which requires an exhaustion of administrative remedies for refund suits)[4] constitutes a waiver by the United States of its sover-

eign immunity with respect to refund suits. *Miller v. United States,* 784 F.2d 728, 729 (6th Cir.1986).

However, according to 26 U.S.C. § 6511, only a "taxpayer" can file a claim for refund under § 7422. Since a party may not bring a refund suit under § 1346(a)(1) without first filing a claim under § 7422, it follows that only a "taxpayer" can bring a refund suit under § 1346(a)(1). The definition of "taxpayer" is any person subject to any internal revenue tax. 26 U.S.C. § 7701(a)(14).

▇ The United States Supreme Court addressed the issue of whether a third party who pays another person's tax liability may bring a refund action under § 1346(a)(1) in *United States v. Williams,* 514 U.S. 527, 115 S.Ct. 1611, 131 L.Ed.2d 608 (1995). In *Williams,* the Court held that an ex-wife who pays her ex-husband's federal tax under protest, in order to remove a tax lien on the house formerly owned jointly by both, had standing to bring a refund action under § 1346(a)(1), even though she was not the person against whom the tax was assessed. *Id.* at 540, 115 S.Ct. 1611. The Court reasoned that the government "subjected" the wife to the tax by placing a lien on her home and then accepting the tax payment under protest. The Court also noted that § 1346(a)(1) does not state that only the person "assessed" may sue, but that Congress chose the broader phrase "subject to" tax liability, which included the wife, even though she was not the party "assessed" with the tax. *Id.* at 535, 115 S.Ct. 1611.

4. Section 7422(a) provides in relevant part:
No suit or proceeding shall be maintained in any court for the recovery of any internal revenue tax alleged to have been erroneously or illegally assessed or collected, or of any penalty claimed to have been collected without authority, or of any sum alleged to

have been excessive or in any manner wrongfully collected, until a claim for refund or credit has been duly filed with the Secretary, according to the provisions of law in that regard, and the regulations of the Secretary established in pursuance thereof.

Furthermore, the Court emphasized that the wife had no realistic alternative to paying the tax and that it did not believe that Congress intended to leave parties in her position without a remedy. *Id.* at 536–39, 115 S.Ct. 1611. The Court reasoned that the wife in *Williams* would be left without a meaningful remedy if she could not bring a refund suit, because she had no other adequate administrative or judicial remedy. The Court noted that the Government was not obligated to enter into a lien substitution agreement with Williams under 26 § 6325(b)(3),[5] since the remedy is available only at the Government's discretion. The Court held that Williams and other parties who are forced to pay another's tax under duress could bring a refund suit because no other judicial remedy was adequate. *Id.* at 537, 115 S.Ct. 1611.

The IRS argues that *Williams* is inapplicable to the case at hand for two reasons. (Def.'s Mot. for Summ. J. at 6–8.) First, the IRS argues, and the Court agrees, that *Williams* is limited to the facts of that case. In *Williams,* the Court stated: "We do not decide the circumstances, if any, under which a party who volunteers to pay a tax against someone else may seek a refund under 1346(a)(1)." *Williams,* 514 U.S. at 540, 115 S.Ct. 1611. The plaintiff has not suggested, nor proven, that it paid Mr. Kelly's taxes under duress, as did the ex-wife and co-owner of the property subject to the tax lien in *Williams.*[6] Instead, this Court finds that the plaintiff paid Mr. Kelly's taxes voluntarily, and therefore, *Williams* does not provide a vehicle for this Court to assert subject matter jurisdiction.

Second, the IRS argues that the *Williams* Court found jurisdiction because third parties, like the ex-wife in Williams, did not have any other remedies and, subsequent to *Williams,* Congress provided for alternate remedies that the plaintiff in the instant case did not pursue. (Def.'s Mot. for Summ. J. at 7–8.) Congress enacted § 3106 of the Internal Revenue Service Restructuring & Reform Act of 1998 to address the problem that the Court faced in *Williams.* S.Rep. No. 105–174, at 54–55 (1998), *reprinted in* 1998–3 C.B. 537, 590–91. In its "Reasons for Change," the Committee of Finance stated that "third parties should have a mechanism to release an erroneous tax lien." *Id.* at 54. Thus, the Committee stated that it "believes it is appropriate to provide relief similar to that provided to third parties who are subject to wrongful levy of property." The provision creates an administrative procedure similar to the wrongful levy remedy for third parties in § 7426. *Id.*

This amendment added subsection (b)(4) to 26 U.S.C. § 6325 and subsection (a)(4) to 26 U.S.C. § 7426. The new statutory scheme of 26 U.S.C. § 6325(b)(4) requires the IRS to issue a certificate of discharge as a matter of right to third parties under specified circumstances and 26 U.S.C. § 7426(a)(4) provides a judicial remedy. Pursuant to 26 U.S.C. § 6325(b)(4)(A), the third party has the right to obtain a certificate of discharge by applying to the Secretary of the Treasury for such a certificate and either depositing cash or furnishing a bond sufficient to protect the lien interest of the United States. The Secretary does

---

**5.** Section 6325(b)(3) permits the Government, in its discretion, to discharge a lien on property (by issuing a certificate of discharge) if the property is sold and, pursuant to a written agreement, the sale proceeds are held subject to the federal tax lien, with the lien retaining

the same priority it had against the property discharged.

**6.** In the current case, the plaintiff did not respond to any of the defendant's arguments concerning sovereign immunity.

not have the discretion to refuse to issue a certificate of discharge if this procedure was followed, thus curing the defect in this remedy discussed in *Williams*.

After the owner of property follows the procedure of 26 U.S.C. § 6325(b)(4)(A), the Secretary must refund the amount deposited or release the bond, to the extent that the Secretary determines that the taxpayer's unsatisfied liability giving rise to the lien can be satisfied from a source other than property owned by the third party, or the value of the interest of the United States in the property is less than the Secretary's prior determination of its value. 26 U.S.C. § 6325(b)(4)(B). The owner of the property then has 120 days after the certificate is issued to challenge the Secretary's determination by bringing a civil action against the United States in federal district court. 26 U.S.C. § 7426(a)(4). If no action is filed within the 120–day period, the Secretary has 60 days to apply the amount deposited or collected on the bond, to the extent necessary to satisfy the unsatisfied liability secured by the lien and refund any amount which is not used to satisfy the liability. 26 U.S.C. § 6325(b)(4)(C).

If an action is filed and the Court determines that the value of the interest of the United States in the property exceeds the actual value of such interest, the Court will grant a judgment ordering the refund of the amount of the deposit or a release of the bond to the extent that the amount of the deposit or bond exceeds the value determined by the Court. 26 U.S.C. § 7426(b)(5).

The IRS argues that §§ 6325(b)(4) and 7426(a)(4) supercede *Williams* and that third parties must employ the remedies provided by these provisions (and cannot maintain refund suits under *Williams* ). (Def.'s Mot. for Summ. J. at 8.) In support of this argument, the IRS points to

§ 7426(a)(4), which states, "[n]o other action may be brought by such person for such a determination." Furthermore, the IRS argues, since Congress intended to bring these cases to a quick resolution by imposing the 120–day limit, permitting a third party to use another action, such as a refund action, would undermine the strict 120–day statute of limitations. (*Id.*)

Since §§ 6325(b)(4) and 7426(a)(4) are fairly new sections, enacted in 1998, few cases were found that interpret the statutes and no reported cases were found that deal specifically with whether the sections supercede *Williams*. The United States District Court for the Southern District of Florida touched on the issue when deciding *Coutant v. United States*, No. 00–14163, 2002 WL 471769, 2002 U.S. Dist. LEXIS 7114 (S.D.Fla. Feb. 26, 2002). Yet, unlike the present case, the plaintiff in *Coutant* had already exhausted her administrative remedies by obtaining a certificate of discharge pursuant to § 6325(b)(4). *Id.* at 2002 WL 471769, *1, 2002 U.S. Dist. LEXIS 7114, *3.

The court in *Coutant* stated, "[o]n their face, 26 U.S.C. §§ 7426(a)(4) and (b)(5) do allow a person other than the taxpayer to bring a civil action against the IRS *within 120 days after the issuance of a certificate of discharge* for a judicial determination of the value of the IRS' interest in the property, and if the IRS erred, to award a refund." *Id.* at 2002 WL 471769, *3, 2002 U.S. Dist. LEXIS 7114, *7–8 (emphasis added). The court later stated, "[t]he procedures set forth in 26 U.S.C. § 6325 basically require a third party to discharge a lien (in order to clear title to the subject property), *and then administratively challenge the lien afterwards* in order to collect a refund. Section § 7426(a)(4) then provides a judicial remedy." *Id.* at 2002 WL 471769, *3, 2002 U.S. Dist. LEXIS 7114, *10 (emphasis added). This interpretation

supports the IRS's argument that third parties must employ the remedies provided by the new statutes before bringing a refund action in court.

*EC Term of Years Trust v. United States,* No. ER–03–CA–363, 2004 WL 911307, 2004 U.S. Dist. LEXIS 7215 (W.D.Tex. Apr. 23, 2004), also addresses *Williams,* in the analysis of whether a prior order dismissing a wrongful levy claim is res judicata as to the present claim. The United States District Court for the Western District of Texas, discusses *Williams* in its analysis and briefly states in a footnote that "amendments to the lien provisions of the Internal Revenue Code in 1998 may address the very factual scenario presented in *Williams,* thereby potentially further limiting the impact of the case under its own facts." *Id.* at 2004 WL 911307, *3 n. 3, 2004 U.S. Dist. LEXIS 7215, *16 n. 3 (citing 26 U.S.C. §§ 6325(b)(4) and 7426(a)(4)).

Although *Coutant* and *EC Term of Years Trust* are both factually different from the current case, they are the only cases addressing the interplay of §§ 6325(b)(4) and 7426(a)(4) and the holding of *Williams.* Both cases support the IRS's argument that a third-party must first exhaust the remedies provided by §§ 6325(b)(4) and 7426(a)(4) before bringing a refund suit under § 1346(a)(1). In the present case, the City is a third party that did not use the available remedies before bringing the present refund suit.

The City should have exhausted the administrative remedies provided by Congress' enactment of § 3106, by seeking a certificate of discharge from the IRS under § 6325 before bringing a civil action against the United States pursuant to § 7426(a)(4). The congressional enactment gives parties like the City an administrative remedy in § 6325 in order to satisfy the § 7422 requirement that a party must exhaust administrative remedies in order to bring a civil action in court.

■■ Based on the scant judicial interpretations of §§ 6325(b)(4) and 7426(a)(4), and based on the well-established principles that: (1) waivers of sovereign immunity are construed narrowly and in favor of the sovereign, *Department of the Army v. Blue Fox, Inc.,* 525 U.S. 255, 261, 119 S.Ct. 687, 142 L.Ed.2d 718(1999); (2) a federal court is presumed to lack jurisdiction in a particular case unless the contrary affirmatively appears, *Kokkonen v. Guardian Life Ins. Co. of Am.,* 511 U.S. 375, 377, 114 S.Ct. 1673, 128 L.Ed.2d 391 (1994); and (3) the party asserting jurisdiction (Plaintiff) bears the burden of establishing subject matter jurisdiction (and has not met that burden here), *Kokkonen,* 511 U.S. at 377, 114 S.Ct. 1673; this Court will dismiss the action for lack of subject matter jurisdiction.

## CONCLUSION

Accordingly,

**IT IS ORDERED:**

(1) That Plaintiff's motion for summary judgment [Record No. 10] be, and the same hereby is, **DENIED;**

(2) That Defendant's motion for summary judgment [Record No. 13] be, and the same hereby is, **GRANTED;**

(3) That Plaintiff's claims against Defendant be, and the same hereby are, **DISMISSED WITH PREJUDICE;**

(4) That the clerk be directed that this matter shall be, and the same hereby is, **STRICKEN FROM THE ACTIVE DOCKET.**