**Stanford C. STODDARD, Plaintiff,**

v.

**UNITED STATES of America,
Defendant.**

Case No. 07–11173.

United States District Court,
E.D. Michigan,
Southern Division.

Sept. 30, 2009.

Marc E. Thomas, Bendure & Thomas, Bingham Farms, MI, for Plaintiff.

Thomas P. Cole, Washington, DC, for Defendant.

### *ORDER*

VICTORIA A. ROBERTS, District Judge.

## I. INTRODUCTION

This matter is before the Court on cross Motions for Summary Judgment filed by the parties. The Motions were referred to Magistrate Steven Whalen, pursuant to 28 U.S.C. § 636(b)(1)(B), for a Report and Recommendation ("R & R"). On August 5, 2009, the Magistrate Judge issued an R & R recommending that the Court: (1) deny Plaintiff's Motion, (2) grant Defendant's Motion for the tax years 1980, 1995, and 1998 through 2000, and (3) deny Defendant's Motion for the 1984 tax year. Plaintiff objects to the Magistrate's conclusions regarding the 1980, 1995, and 1998 through 2000 tax years. Plaintiff accepts the balance of the R & R pertaining to 1984. For the reasons stated, the Court **ADOPTS** the Magistrate's R & R with modifications.

## II. BACKGROUND

This is a taxpayer's refund action. At issue is whether the Internal Revenue Service ("IRS") erroneously applied a 2001 overpayment of $177,384.23 to taxes, penalties and interest owed for several prior years dating back to 1980. Plaintiff Stanford Stoddard contends the assessments were erroneous or otherwise barred by the statute of limitations.

Plaintiff was a partner in various business entities, including the Barrister Equipment Associates Series at issue in this case. Plaintiff timely filed IRS Forms 1040 for 1980 through 1986; on each return he listed income from various partnerships.

On December 29, 1987, Plaintiff filed Amended IRS Forms 1040s for the same years; he says he made additional payments for all years except 1983, for which he obtained a refund.

On March 4, 1988, Plaintiff again filed amended IRS Forms 1040 for the 1980 and 1983 tax years, both showing refunds.

In May 1989, Plaintiff and his wife entered into a settlement agreement with the

IRS regarding partnership items for Barrister Equipment Associates 136.

In May 1990, Plaintiff and his wife filed an Offer of Waiver of Restrictions on Assessment and Collection of Deficiency in Tax and of Acceptance of Overassessment on IRS Form 870–AD for tax years 1982 through 1986. The IRS accepted the offer on July 17, 1990. As set forth in the agreement, there was: (a) no change in the tax returns filed for 1985 or 1986; (b) liability of $4,072 for the 1982 year; (c) liability of $3,836 for the 1984 tax year; and (d) a reduction in liability of $73,121.00 for the 1984 tax year.

On April 4, 1996, the IRS made an assessment of $22,756.00 in additional taxes and $103,556.73 in interest for the 1980 tax year on IRS Form 3552. The IRS contends the additional assessment resulted from the recapture of an investment tax credit carryback related to Barrister Equipment Associates 140.

On April 23, 2002, Plaintiff filed an Offer in Compromise ("OIC") on Form 656, due to "doubt as to liability" for the tax years 1980, 1984, 1995, 1998, 1999 and 2000. The Form 656 contained a standard provision that the IRS would keep any refund due to the taxpayer because of overpayment for tax periods extending through the calendar year that the IRS accepts the offer; it states that this condition does not apply if the offer is based on doubt as to liability. On July 22, 2002, the IRS notified Plaintiff that it was reviewing the OIC.

On October 15, 2002, Plaintiff filed his 2001 federal income tax return on IRS Form 1040. He declared an overpayment of $411,480.00 and designated the entire overpayment to be applied to his 2002 estimated federal income tax payments.

Instead, in a December 2, 2002 correspondence, the IRS applied $177,384.23 of that overpayment to taxes it claimed were owed for six previous tax periods:

| Tax Period | Amount Applied |
| --- | --- |
| 1980 | $ 72,989.14 |
| 1984 | $ 50,451.24 |
| 1995 | $ 19,317.62 |
| 1998 | $ 326.78 |
| 1999 | $ 18,215.33 |
| 2000 | $ 16,084.12 |
| TOTAL | $177,384.23 |

Plaintiff contends the assessments were erroneous.

On December 31, 2002 and January 23, 2003, Plaintiff filed administrative refund claims with the IRS, seeking refund of the seized overpayment and reversal of penalties and interest assessed for underpayment of tax.

On April 14, 2003, the IRS denied Plaintiff's OIC.

On April 15, 2004, Plaintiff filed amended income tax returns for the 1980 and 1984 tax years, both of which claimed a refund of the portion of the 2001 overpayment applied to those years. On the same date, Plaintiff filed formal refund claims for the tax years 1995, 1998, 1999 and 2000.

The IRS denied the refund claims by correspondence dated November 8, 2006. On March 13, 2007, following an informal review, the IRS reaffirmed its denial of the refund claims.

Plaintiff timely filed this action on March 19, 2007. During the course of discovery, the IRS notified Plaintiff that some tax files pertaining to him were lost or destroyed. Both parties filed motions for summary judgment. Plaintiff seeks summary judgment with respect to the portion of the 2001 overpayment that was applied to the 1980 tax period.

This Court has jurisdiction pursuant to 28 U.S.C. § 1346(a)(1).

## III. STANDARD OF REVIEW

This Court reviews *de novo* those portions of an R & R to which specific objections are made. *28 U.S.C. § 636(b)(1); Fed.R.Civ.P. 72(b).* See also *U.S. Fidelity and Guar. Co. v. Thomas Solvent Co.*, 955 F.2d 1085, 1088 (6th Cir.1992) (noting that a district court conducts de novo review of magistrate judge's rulings on dispositive motions); *Miller v. Currie*, 50 F.3d 373, 380 (6th Cir.1995) ("[A] general objection to a magistrate's report, which fails to specify the issues of contention, does not satisfy the requirement that an objection be filed. The objections must be clear enough to enable the district court to discern those issues that are dispositive and contentious."). The Court may accept, reject or modify any or all of the Magistrate Judge's findings or recommendations. 28 U.S.C. § 636(b)(1).

The standard for determining whether summary judgment is appropriate is " 'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.' " *Amway Distributors Benefits Ass'n v. Northfield Ins. Co.*, 323 F.3d 386, 390 (6th Cir.2003) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251–52, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)). The evidence and all reasonable inferences must be construed in a light most favorable to the non-moving party. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986); *Redding*, 241 F.3d at 532.

Federal Rule of Civil Procedure 56(c) empowers the court to render summary judgment "forthwith if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." See *Redding v. St. Eward*, 241 F.3d 530, 532 (6th Cir.2001).

If the movant establishes by use of the material specified in Rule 56(c) that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law, the opposing party must come forward with "specific facts showing that there is a genuine issue for trial." *First Nat'l Bank v. Cities Serv. Co.*, 391 U.S. 253, 270, 88 S.Ct. 1575, 20 L.Ed.2d 569 (1968); see also *McLean v. 988011 Ontario, Ltd.*, 224 F.3d 797, 800 (6th Cir.2000). Mere allegations or denials in the non-movant's pleadings will not meet this burden, nor will a mere scintilla of evidence supporting the non-moving party. *Anderson*, 477 U.S. at 248, 252, 106 S.Ct. 2505. Rather, there must be evidence on which a jury could reasonably find for the non-movant. *McLean*, 224 F.3d at 800 (citing *Anderson*, 477 U.S. at 252, 106 S.Ct. 2505).

## IV. ARGUMENTS AND ANALYSIS

### A. Burden of Proof

■ In general, a presumption of correctness attaches to a tax assessment if the assessment is supported by a minimal evidentiary or factual foundation. *United States v. Stonehill*, 702 F.2d 1288 (9th Cir.1983). However, an assessment is "naked" and "beyond saving" when "the records supporting an assessment are excluded from evidence, ... or are nonexistent, ..., so that the basis upon which an assessment is calculated is beyond the knowledge of the court." *United States v. Schroeder*, 900 F.2d 1144, 1149 (7th Cir. 1990).

■ Although courts recognize that the loss of the administrative file may mean that an assessment lacks a factual foundation, loss of the file does not necessarily create a "naked assessment." *Cook v.*

*United States,* 46 Fed.Cl. 110, 114 (Ct. Fed.Cl.2000). When the government produces evidence to support the assessment in lieu of the lost file, demonstrating that the assessment has a "foundation in fact," then the presumption of correctness applies. *Id.* at 115. The burden of proof then shifts to the taxpayer to show that the assessment is arbitrary, erroneous or excessive. *Helvering v. Taylor,* 293 U.S. 507, 55 S.Ct. 287, 79 L.Ed. 623 (1935). If the taxpayer rebuts the presumption, it disappears. *Stonehill* at 1294. The burden of proving the deficiency then reverts to the government. *Id.*

### B. Objection 1: 1980 Assessment

The Magistrate said the Court lacked jurisdiction under the Tax Equity and Fiscal Responsibility Act of 1982, P.L. 97–248 ("TEFRA") to consider Plaintiff's arguments, because Plaintiff presented no evidence on which a reasonable fact finder could conclude that the 1980 assessment was for anything other than a partnership item.

Plaintiff argues the Magistrate erred in presuming the 1980 assessment was a partnership assessment controlled by TEFRA and not barred by the statute of limitations in 26 U.S.C. § 6501(a). He contends there is a question of fact whether: (1) the IRS adjusted his income for 1983 based on the judgment in the Barrister partnership level proceeding; (2) any such adjustment reduced a carryback claimed on his 1980 amended income tax return; (3) the IRS made an additional assessment of tax for 1980, because of a disallowed carryback; and (4) the statute of limitations barred the additional assessment for 1980.

The Government's position is that: (1) Plaintiff was a partner in Butler Properties, which in turn was a partner in Barrister Equipment Series 140; (2) the tax matters partner of Barrister Equipment

Series 140 initiated a Tax Court proceeding in 1989 which addressed proposed TEFRA adjustments to Barrister's income for the 1983 and 1984 tax years; (3) the Tax Court proceeding was resolved in 1995 through the entry of a stipulated judgment; (4) pursuant to that judgment, the IRS made adjustments to Plaintiff's income for the 1983 tax year; (5) the adjustments to Plaintiff's income for 1983, once made, reduced a carryback credit which he previously claimed on his 1980 amended tax return; (6) in 1996, because of the disallowed carryback for 1980, the IRS made an additional assessment of tax for the 1980 tax year; and (7) the assessment (related to a 1983 TEFRA adjustment) was not barred by the statute of limitations.

■ Under TEFRA, a statute of limitations defense relates to a partnership item that must be raised at the partnership level. *Kaplan v. United States,* 133 F.3d 469, 473 (7th Cir.1998). A "partnership item" is "any item required to be taken into account for the partnership's taxable year ... [that] is more appropriately determined at the partnership level than at the partner level." 26 U.S.C. § 6231(a)(3). Changes in the tax liabilities of individual partners which result from the correct treatment of partnership items determined at the partnership level proceeding are defined under TEFRA as "computational adjustments." IRC § 6231(a)(6).

TEFRA contemplates the Commissioner's determination at the individual partner level of "affected items," which are defined as "any item to the extent such item is affected by a partnership item." 26 U.S.C. § 6231(a)(5). Penalties assessed against a partner based on the partner's tax treatment of partnership items on his individual return are examples of affected items. See *Olson v. United States,* 172 F.3d 1311, 1317–18 (Fed.Cir.1999); *N.C.F.*

*Energy Partners v. Commissioner,* 89 T.C. 741, 744–46 (1987).

The Government admits that its administrative files for the 1980 tax year no longer exist or cannot be located. To meet its burden of production, the Government offered the following evidence: (1) a Certificate of Assessments and Payments for the 1980 tax year [See Defendant's Ex. 3], which lists all of the assessments, penalties, interests, abatements, credits and refunds against Plaintiff and his deceased wife from June 17, 1981 through November 27, 2006; (2) Plaintiff's original 1980 income tax return [See Plaintiff's Ex. I, p. 25], which indicates that he had a partnership interest in an entity called "Butler Properties; (3) a Prompt Assessment Billing Assembly on Form 3552 [See Cole Dec. Ex. 11, p. 2048]; (4) a Request for Quick or Prompt Assessment on Form 2859 [See Cole Dec. Ex. 11, p.], which indicates that additional tax was assessed related to "Butler Properties" and "Barrister Flow-through"; (5) an Income Tax Examination Changes Form 4549A–CG [See Cole Dec. Ex. 11, p.], which indicates that the tax changes related to "Barrister Equipment Series 140" and an investment tax credit and an investment tax credit carryback; and (6) a microfiche page showing that Plaintiff is one of two partners in the entity with the taxpayer identification number identified for Butler Properties [See Cole Dec. Ex. 16].

This evidence is sufficient to establish the Government's *prima facie* case. Accordingly, the presumption of correctness attaches to the assessment. See *Coleman v. United States,* 704 F.2d 326, 329 (6th Cir.1983) (holding that assessment was naked, but noting that "secondhand" records or "any demonstrably reasonable methodology of estimation" may be used to establish presumption of correctness).

In rebuttal, Plaintiff offered the following to meet his burden to show the assessment is erroneous: (1) the 1990 settlement agreement (Form 870–AD) with the IRS [See Plaintiff's Ex. J]; (2) the OIC that was pending at the time of the seizure of the overpayment [See Plaintiff's Ex. K]; (3) IRS Document Identification Forms regarding destroyed documents [See Plaintiff's Ex. GG]; (4) the first page of the amended 1980 tax return, dated December 30, 1987, and prepared by Daniel Maher, along with check payable to the Internal Revenue Service in the amount of $37,380.00 [See Plaintiff's Ex. G]; (5) the first page of the amended 1980 tax return, dated March 4, 1988 [See Plaintiff's Ex. PP]; (6) a Notice of Deficiency dated May 1, 1996 regarding tax year 1980, along with a handwritten explanation on Form 5260 and an Income Tax Examination Changes form, showing a deficiency of $22,756.00 related to the Barrister 140 partnership [See Plaintiff's Ex. OO]; and (7) the affidavit of Daniel Maher, Plaintiff's former accountant [See Doc. 40]. Close review of the evidence supports Plaintiff's claim that material issues of fact exist which preclude summary judgment.

The IRS Document Identification Forms indicates that the IRS' 1980 and 1983 tax files were destroyed. The Government relies on the 1980 Certificate of Assessments and Payments to support the assessment. *See* Exh. 3. It shows assessments of tax and interest of $22,576.00 and $103,556.73, respectively, on April 4, 1996. However, it shows no reversal of an investment tax credit or a carryback for either 1980 or 1983. The Government concedes the document omits the amended return filed by Plaintiff in late 1987 or early 1988, though Plaintiff provides a copy of the first page of the return. This further calls into question the accuracy of the certificate. Similarly, the 1983 Certificate of Assessments and Payments does not reflect reversal of an investment tax credit (which would affect the 1980 tax year). *See* Exh. BB. The

Government has not offered a notice of deficiency or a Barrister partnership audit assessment for the 1983 tax year (from which the 1980 carryback credit arose).

Notably, the "Notice of Deficiency" for the 1980 tax year shows a deficiency of $0, and penalties of $1,138.00 and $5,689.00, totaling $6,827.00. *See* Exh OO. Plaintiff contends that only $5,589.00 was assessed, and that he never received a notice of deficiency or assessment for any remaining amounts the IRS claims to be due. The "Income Tax Examination Changes" form reflects a $22,756.00 deficiency which the IRS says Plaintiff owes for 1980. *See* Exh. 11. But, it shows no adjustment to taxable income or investment tax credit recapture for 1980, thus the source of the deficiency is not clear. Another inconsistency exists in the Request for Quick or Prompt Assessment, which reflects taxes and interest of $124,622.66 owed for 1980 and a statute of limitations date of May 16, 1996. *Id.*

The affidavit of Plaintiff's former accountant, Daniel Maher, indicates that Plaintiff's 1986 amended income tax return contained a large loss on line 4, which arose from the payment of professional fees incurred by Plaintiff in the course of a government investigation of Michigan National Bank, a bank in which Plaintiff and other family members had a controlling interest. Mr. Maher says the large deduction for 1986 was carried back three years to 1983, resulting in excess tax credits for 1983, which were in turn carried back three more years to 1980, and that none of the changes in the amended income tax returns involved any investment in, or audit of, the Barrister Equipment Associates tax shelters.

The Government argues that Mr. Maher is not competent to rebut its evidence because he has no knowledge regarding the Barrister partnership proceeding. This Court disagrees. Mr. Maher's statements rebut the Government's claim that the carryback recapture from 1983 to 1980 was a Barrister partnership item. They create a question of fact regarding the source of the deficiency. Coupled with the above evidence, there is sufficient disagreement for presentation to a jury.

If, in fact, the 1980 assessment resulted from the judgment in the Barrister partnership level proceeding, it is a partnership assessment controlled by TEFRA and Plaintiff is barred from raising the statute of limitations defense in this partner-level, affected items proceeding. This question of fact must be resolved before the Court can determine which statute of limitations, if any, applies.

## C. Objection 2: 1990 Settlement Agreement

█ Plaintiff argues the Magistrate erred in finding that the 1990 settlement agreement between Plaintiff and the IRS did not include Barrister Equipment Series 140 and all of its issues. He contends there is a question of fact regarding whether the second page of the IRS Form 870–AD, which includes printed language excluding partnership items, was properly incorporated in the agreement.

The Magistrate decided that the 1980 assessment was not barred by the 1990 settlement agreement because the second page of the IRS Form 870–AD contained specific language that excluded partnership items from the scope of the agreement. The Magistrate rejected Plaintiff's claims about the second page, finding that it was clearly part of the Form 870–AD agreement, not a separate, unrelated document. The Magistrate said that even though the agreement covered 1983 (the year related to the 1980 carryback), the carryback itself was a partnership item regarding Butler Properties/Barrister

Equipment Series 140, and was excluded from the agreement.

The Form 870–AD covers the tax years 1982 to 1986 and has a handwritten notation which states "5 years closed at the appellate level plus 3 year carryback for investment tax credit (covers 1980)." *See* Exhibit J. It is unclear by whom and when this notation was written, and whether this was part of the agreement. Exhibit J also includes "Letter 913" from the IRS accepting Plaintiff's "Form 870–AD" and an attachment which includes a list of terms and conditions relative to "Form 870–AD."

Plaintiff's affidavit states that he never saw the second page of the IRS Form 870–AD. *See* Doc. 39. Yet, Plaintiff submitted it as an exhibit and argues that those terms and conditions, found on the back of "Form 870–AD," confirm that the 1990 settlement is final and binding. *See* Doc. 24, p. 10. Plaintiff seeks to have it both ways. He essentially asks the Court to find that the terms and conditions were not part of the original agreement, but to consider them to find that the 1990 settlement included the 1980 tax year. The Court finds that the Magistrate did not err in rejecting this argument.

### D. Objection 3: Seizure of 2001 Overpayment

Plaintiff argues that the seizure of his 2001 overpayment, while he had a pending OIC, was a violation of the tax code and regulations. He contends that 26 C.F.R. § 301.7122–1(j), the temporary regulation in place at the time he submitted his OIC, is in conflict with 26 U.S.C. § 6331(k)(1)(A) and is beyond the legitimate rulemaking power of the IRS. Plaintiff says the Magistrate overlooked the plain language of the OIC in finding that the IRS did not waive any statutory right to seize the 2001 overpayment. He says the Court has jurisdiction to apply equity and impose a remedy similar to recoup-

ment, and award him a credit for future income taxes that become due and owing.

The Magistrate held that the regulation was a statutorily permissible exercise of the IRS's rule-making power because it derived from the IRS's power to collect taxes through offsets, as set forth in 26 U.S.C. § 6402. The Magistrate says 26 U.S.C. § 6331(i)(3)(B)(i), incorporated into 26 U.S.C. § 6331(k), permits an offset during the pendency of an OIC. The Government agrees with this reasoning.

26 U.S.C. § 6331(k) contains a statutory bar on levies during the pendency of an offer in compromise:

(1) Offer in compromise pending

No levy may be made under subsection (a) on the property or rights to property of any person with respect to any unpaid tax—

(A) during the period that an offer-in-compromise by such person under section 7122 of such unpaid tax is pending with the Secretary;

26 U.S.C. § 6331(k)(1)(A). However, 26 U.S.C. § 6331(k)(3) says that rules similar to 26 U.S.C. § 6331(i)(3) and (4) shall apply to subsection 6331(k).

26 U.S.C. § 6331(i) generally prohibits levies during the pendency of an action in federal trial court for recovery of a refund. However, § 6331(i)(3) contains two exceptions; one applies here:

(B) Certain levies

This subsection shall not apply to—

(i) any levy to carry out an offset under section 6402;

26 U.S.C. § 6331(i)(3)(B)(i).

26 U.S.C. § 6402 grants broad authority to the IRS to credit overpayments to any tax liability, which may reasonably include interest and penalties. *Smith v. United States*, 4 Fed.Appx. 759 (Fed.Cir.2001). Thus, notwithstanding the perceived un-

fairness, the statute permits such a seizure while an offer in compromise is pending.

Additionally, under the current regulation 26 C.F.R. § 301.7122–1(g)(5), which contains language identical to the temporary regulation, the submission of an OIC does not automatically operate to stay collection of a tax liability. This supports the view that the IRS may, but is not required to, stay the collection of tax while an OIC is pending.

Plaintiff admits that this language is discretionary, but contends the IRS either contracted away or waived its right to seize his refund by the terms of the OIC. He relies on Item 8(g) of the OIC:

> As additional consideration beyond the amount of my/our offer, the IRS will keep any refund, including interest, due to me/us because of overpayment of any tax or other liability, for tax periods extending through the calendar year that the IRS accepts the offer. I/We may not designate an overpayment ordinarily subject to refund, to which the IRS is entitled, to be applied to estimated tax payments for the following year. This condition does not apply if the offer is based on Doubt as to Liability.

See Exhibit K, p. 3. He also relies on a form, contained in the same exhibit, which includes a section regarding "Withholding Collection Activities":

> We will withhold collection activities while we consider your offer. We will not act to collect the tax liability:
> - While we investigate and evaluate your offer
> - For 30 days after we reject an offer
> - While you appeal an offer rejection

*See* Exhibit K, p. 5. It is unclear whether this form was part of the OIC, and based on the parties' submissions, the Court cannot conclude that it was. Additionally, page 1 of the OIC says that "signature(s) of taxpayer is required on last page of Form 656." Neither Plaintiff, nor the Government included a signature page with their exhibits. In its absence, the Court cannot conclude that the parties agreed to be bound by any specific terms and conditions, and that there was a waiver of the right to pursue collection. This objection lacks merit.

## E. Objection 4: Assessment of Addition to Tax

Plaintiff argues that the Magistrate erred in finding that he was liable for 26 U.S.C. § 6654 additions to tax for underpayment of estimated taxes. He contends that the nature of his income is extremely complex and it is difficult for him to obtain information necessary to accurately estimate his tax liability. Thus, he says there is a question of fact as to whether the additions to tax should be waived based on "unusual circumstances," pursuant to § 6654(e)(3)(A).

The Magistrate said that Plaintiff's claim of "unusual circumstances" is a claim of "reasonable cause" in disguise, and § 6654(e)(3)(A) does not permit abatement for reasonable cause. The Magistrate opined that Plaintiff's difficulty in obtaining information is no more unusual than what might be experienced by any other taxpayer with investment income from multiple sources.

26 U.S.C. § 6654 requires assessment of an addition to tax for an individual's underpayment of estimated tax payments. Section 6654(e)(3)(A) contains an exception:

> No addition to tax shall be imposed under subsection (a) with respect to any underpayment to the extent the Secretary determines that by reason of casualty, disaster, or other unusual circumstances the imposition of such addition

to tax would be against equity and good conscience.

26 U.S.C. § 6654(e)(3)(A).

Plaintiff offers the affidavit of his accountant, Roger Steensma, to support his claim of unusual circumstances. Steensma says that he has prepared Plaintiff's personal income tax returns since 1995 and that they present "one of a kind" issues that are unique in complexity and scope; he spends an unparalleled number of hours preparing Plaintiff's income tax return. Steensma also says that for the years in which the § 6654 penalty was imposed, Plaintiff's failure to pay adequate estimated payments was largely due to untimely receipt of IRS Form 1099, IRS Schedule K–1 or other reports from the reporting sources.

■ Plaintiff says the R & R suggests he met the threshold required by the court in *Carlson v. United States*, 126 F.3d 915 (7th Cir.1997), that a showing of "reasonable cause"—as that phrase relates to penalties for which there is a reasonable cause exception—has to be made before a taxpayer could meet the "unusual circumstances" exception under § 6654(e)(3)(A). There, because the taxpayer could not even meet the reasonable cause standard for waiver of other tax penalties, he could not demonstrate unusual circumstances sufficient to avoid the § 6654 addition to tax.

Plaintiff says he meets the reasonable cause standard and goes beyond by showing it was beyond his control to obtain the necessary information. The Government counters that to the extent *Carlson* allows for a reasonable cause exception to the § 6654 addition to tax, the Seventh Circuit improperly grafted a reasonable cause exception not provided by Congress. The Court agrees; the plain language of the statute does not contain a reasonable cause exception.

Plaintiff also cites *In re Sims*, 1991 WL 322994 (Bkrtcy.E.D.La., 1991) in support of his contention that his situation falls within the unusual circumstances language. Similar to this Plaintiff, the debtor in *Sims* was an investor in a number of business ventures and partnerships. The tax reporting for those entities was handled by individuals other than the debtor and his accountant, and many times they could not obtain information to timely file a tax return. The IRS argued that the debtor was liable for additions to tax pursuant to § 6654. The bankruptcy court held that such inability to obtain needed information constituted an unusual circumstance, such that the imposition of an additional tax would be against equity and good conscience.

Plaintiff notes that the *Sims* decision has been cited by the United States Tax Court without disparagement of its holding. See *Merriam v. Commissioner*, T.C. Memo 1995–432 (distinguishing *Sims* where the records needed to complete taxpayer's return were available to taxpayer, under taxpayer's control, and capable of being generated by taxpayer).

■ The Government, however, says that § 6654(e)(3)(A) applies only if the Secretary has made a determination that "by reason of casualty, disaster, or other unusual circumstances" it "would be against equity and good conscience" to impose the addition. Since no determination was made here, the Government suggests the absence of such a determination cannot be viewed by the Court, or to the extent that it can, must be reviewed on an abuse of discretion standard. It relies on *United States v. Williams*, 514 U.S. 527, 537, 115 S.Ct. 1611, 131 L.Ed.2d 608 (1995) and *Mekulsia v. Commissioner*, 389 F.3d 601, 604 (6th Cir.2004) for this proposition.

In *Williams*, the Court, in discussing why the plaintiff could not avail herself of

§ 6325(b)(3), noted that the remedy afforded by the statute and its implementing regulation was available only at the Government's discretion. *Id.* at 537, 115 S.Ct. 1611.

In *Mekulsia,* the taxpayer challenged the Commissioner's denial of an interest abatement for payment deficiencies under § 6404. The court held the taxpayer must both identify a ministerial act that was required, and was not performed or was performed in an erroneous manner, and prove abuse of discretion. *Id.* at 604. The court did not reach the abuse of discretion question because it found all relevant acts were discretionary and not ministerial.

Here, the Government cites to no similar discretionary language in § 6654(e)(3)(A). This Court rejects the contention that the decision is not subject to judicial review.

█ The Government additionally says that Plaintiff's argument regarding his inability to make estimated payments is not credible, because § 6654(d)(1)(B)(ii) provides a safe harbor provision where taxpayers make estimated payments based on the prior year's tax figure. That credibility determination is a question of fact for the jury.

## IV. CONCLUSION

The Court **ADOPTS** the Magistrate's Report and Recommendation with the following modification:

A. Defendant's Motion for Summary Judgment regarding the 1980, 1995, and 1998 through 2000 tax years is **DENIED** for the reasons stated.

## REPORT AND RECOMMENDATION

R. STEVEN WHALEN, United States Magistrate Judge.

On March 19, 2007, Plaintiff Stanford C. Stoddard filed a taxpayer's complaint for a refund, pursuant to 26 U.S.C. § 6532(a) (referencing 26 U.S.C. § 7422(a)). Before the Court are Plaintiff's motion for summary judgment [Docket # 24] and Defendant's Motion for Summary Judgment [Docket # 27], which have been referred for a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B). For the reasons set forth below, I recommend as follows:

(1) That Plaintiff's motion for summary judgment [Docket # 24] be DENIED.

(2) That Defendant's motion for summary judgment [Docket # 27] be GRANTED IN PART AND DENIED IN PART. Specifically, regarding the assessments for tax years 1980, 1995, 1998, 1999 and 2000, the motion should be GRANTED, and those claims DISMISSED. Regarding the assessments for the 1984 tax year, the Defendant's motion should be DENIED.

### I. FACTS

When Plaintiff filed his 2001 federal income tax return, he declared an overpayment of $411,480.00. *Plaintiff's Motion,* Exhibit D. However, by correspondence dated December 2, 2002, the Internal Revenue Service ("IRS") applied $177,384.23 of that overpayment to taxes it claimed were owed for other tax periods. *Id.,* Exhibit E. Specifically, the IRS applied these funds as follows:

| Tax Period | Amount Applied |
|---|---|
| 1980 | $ 72,989.14 |
| 1984 | $ 50,451.24 |
| 1995 | $ 19,317.62 |
| 1998 | $ 326.78 |
| 1999 | $ 18,215.33 |
| 2000 | $ 16,084.12 |
| TOTAL | $177,384.23 |

Through both his accountant and his attorney, Plaintiff filed a claim for a refund with the IRS. Following discussion and correspondence between the parties, the IRS disallowed the Plaintiff's claim by correspondence dated November 8, 2006. *Id.,* Exhibit B. On March 13, 2007, following further review "on an informal basis," the

IRS reaffirmed its denial of the claim. Plaintiff timely filed the present action on March 19, 2007.

Both parties have filed motions for summary judgment. Plaintiff clarified at oral argument that he seeks summary judgment only as to the portion of his 2001 overpayment that was applied to the 1980 tax period. Additional facts peculiar to each year in question will be discussed in the Analysis section.

## II. STANDARD OF REVIEW

Summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R.Civ.P. 56(c). To prevail on a motion for summary judgment, the non-moving party must show sufficient evidence to create a genuine issue of material fact. *Klepper v. First American Bank*, 916 F.2d 337, 341–42 (6th Cir.1990). Drawing all reasonable inferences in favor of the non-moving party, the Court must determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251–52, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Entry of summary judgment is appropriate "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). When the "record taken as a whole could not lead a rational trier of fact to find for the nonmoving party," there is no genuine issue of material fact, and summary judgment is appropriate. *Simmons–Harris v. Zelman*, 234 F.3d 945, 951 (6th Cir.2000).

Once the moving party in a summary judgment motion identifies portions of the record which demonstrate the absence of a genuine dispute over material facts, the opposing party may not then "rely on the hope that the trier of fact will disbelieve the movant's denial of a disputed fact," but must make an affirmative evidentiary showing to defeat the motion. *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479 (6th Cir.1989). The non-moving party must identify specific facts in affidavits, depositions or other factual material showing "evidence on which the jury could *reasonably* find for the plaintiff." *Anderson*, 477 U.S. at 252, 106 S.Ct. 2505 (emphasis added). If, after sufficient opportunity for discovery, the non-moving party cannot meet that burden, summary judgment is clearly proper. *Celotex Corp.*, 477 U.S. at 322–23, 106 S.Ct. 2548.

## III. ANALYSIS

### A. 1980 Tax Year

The IRS applied $72,989.14 out of Plaintiff's 2001 overpayment to satisfy an assessment regarding the 1980 tax year. The assessment, made in 1996, is documented in Defendant's Exhibit 11, filed with Defendant's Response and Cross–Motion [Docket # 27]. IRS Form 2859, part of that exhibit, contains a "Remarks" section that describes the basis of the assessment as "Re: Butler Properties 38–612, Barrister Flow-through." This is further set forth in form 4549–CG, part of the same exhibit (pg. IRS 2055), describing an adjustment to income based on a flowthrough from the 1983 tax year:

> "Butler Properties / 38–6124762 Flow thru *Barrister Equipment Associates Series 140/11–2646864* / Investment tax credit / investment tax credit carryback." (Emphasis added).

With regard to the present case, the critical item is Barrister Equipment Series 140. Barrister is a partnership item, sub-

ject to the Tax Equity and Fiscal Responsibility Act ("TEFRA"), 26 U.S.C. § § 6221–6234.[1] Barrister Equipment Series 140 was a party to a United States Tax Court partnership-level proceeding in 1989. *See* Defendant's Exhibit # 15. The Defendant states that Plaintiff Stoddard had an interest in the Barrister partnership through Butler Properties, another partnership:

"The Plaintiff's original income tax return for 1980 indicates that he had a partnership interest in an entity called 'Butler Properties. (Plaintiff's Ex. I, Plaintiff's ECF page 25 of 45.) An IRS document related to the 1996 assessments for the 1980 tax year indicates that the additional tax related to 'Butler Properties' and 'Flow Thru Barrister Equipment Series 140' and an investment tax credit or investment tax credit carry-back related to those two entities. (*See* Cole Decl. Exh. 11, (IRS pages 2055 and 2049.) The United States has also located an IRS microfiche page showing that Stanford Stoddard is one of two partners in the entity with the taxpayer identification number identified for Butler Properties on the above-described exhibit. (*See* Cole Decl. Ex. 16.) Thus, the evidence demonstrates that Mr. Stoddard had links, through one of his own partnerships, to Barrister Equipment Series 140." *Defendant's Brief in Opposition* [Docket # 27], p. 9.

Plaintiff's Exhibit OO, attached to his supplemental brief [Docket # 38], is a deficiency letter from the IRS to the Plaintiff, dated May 1, 1996, along with documentation explaining the reasons for the determination of a tax deficiency for 1980. This exhibit further supports the finding that the claimed deficiency was related to the Butler Properties/Barrister Equipment Series 140 partnership item. It contains the same portion of Form 2859 noted above, as well as an explanation on page 4 Schedule A of a Butler Properties adjustment indicating a carry-back from 1983:

"An examination of this partnership [Butler Properties] indicates that your distributive share of ordinary income (loss) should be corrected as shown above. A detailed report which sets forth the adjustments to the partnership income has been furnished to the tax matters partner. Please contact such individual or organization for additional information."

Page 3 of Schedule A (Plaintiff's Exhibit OO, attached to Plaintiff' Supplemental Brief, Docket # 38) also reflects "1983 adjustments attributable to tax motivated transactions" that include a 1983 carry-back investment credit related to Butler Properties.

Thus, Plaintiff's argument that the source of the 1980 carry-back claim is unclear, or that 1983 was not a "Barrister Properties year," lacks plausibility.

Plaintiff argues that the 1980 assessment is barred by the statute of limitations set forth in either 26 U.S.C. § 6501(a) or § 6502(1)(a). However, a statute of limitations challenge by an individual partner is barred by TEFRA, 26 U.S.C. § 6221. In *Kaplan v. United States*, 133 F.3d 469 (7th Cir.1998), the plaintiffs in a tax refund action brought a statute of limitations challenge regarding an alleged partnership item. The Seventh Circuit held:

"This argument cannot succeed because the underlying substantive claim concerns the propriety of the adjustments to the partnership's 1983 tax return. If the Kaplans were to succeed in their

---

1. A "partnership item" is "any item required to be taken into account for the partnership's taxable year ... [that] is more appropriately determined at the partnership level than at

the partner level." 26 U.S.C. § 6231(a)(3). *See Chimblo v. CIR*, 177 F.3d 119, 121 (2nd Cir.1999).

claim, it would affect the tax liability of all of MCDA II's partners. This is precisely the type of challenge prohibited by TEFRA in light of Congress's decision that such suits are better addressed in one fell swoop at the 'partnership level' than in countless suits by individual partners. Other courts share our view that this kind of statute of limitation challenge concerns a partnership item. *See Thomas v. United States,* 967 F.Supp. 505, 506 (N.D.Ga.1997); *Crowell v. Commissioner of Internal Revenue,* 102 T.C. 683, 693, 1994 WL 151303 (1994); *Slovacek v. United States,* 36 Fed.Cl. 250, 254–56 (1996); *Anderson v. United States,* No. C–91–3523 MHP, 1993 WL 204605 (N.D.Cal. June 3, 1993), aff'd. without opinion, 50 F.3d 13 (9th Cir.1995)."

"It is well established that statute of limitations challenges are considered challenges to a partnership item." *Williams v. United States,* 165 F.3d 30, *3 (Table) (6th Cir.1998); *see also Klein v. United States,* 86 F.Supp.2d 690 (E.D.Mich.1999) (Roberts, J.) ("Applying *Kaplan* to the instant case, it is clear that this Court lacks jurisdiction to entertain Plaintiffs' claim for refund with respect to partnership items").

Likewise, this Court lacks jurisdiction, under TEFRA, to consider Plaintiff's arguments, including statute of limitations issues, regarding what the Defendant has clearly shown are partnership items relative to the 1980 assessment.

Furthermore, the 1980 assessment is not barred by a 1990 settlement agreement entered into by the Plaintiff and the IRS. That agreement, set forth an an IRS Form 870–AD, is appended to Plaintiff's motion as Exhibit J [Docket # 24], and settles claims relating to tax years 1982 to 1986.

It is a two-page form, with the second page containing language that specifically and unambiguously excludes partnership items from the scope of the agreement: [2]

"If this offer is accepted, the case will not be opened by the Commissioner unless there was ... a deficiency or over-assessment resulting from adjustments made under Subchapters C and D of Chapter 63 *concerning the tax treatment of partnership and subchapter S items determined at the partnership and corporate level.*" (Emphasis added).

Also, the Defendant has submitted as Exhibit 1 to the Supplemental Declaration of Thomas P. Cole [Docket # 37] a portion of the closing memorandum from Plaintiff's 1990 settlement, which confirms that the Barrister Series 140 matter was not included in the agreement:

"All adjustments necessary for the Barrister 136 settlement were assessed by the TEFRA Support Unit on April 9, 1990.

*"The Barrister 140 and the Dayton Securities tax shelters have not yet been settled.* Therefore, the case will be forwarded to the TEFRA Support Unit which is controlling the Butler tax shelter after processing of the other issues reflected in this Appeals Report." (Emphasis added).

Thus, even though the agreement covers 1983 (the year related to the 1980 carry-back), the carry-back itself was a partnership item regarding Butler Properties/Barrister Equipment Series 140. As a partnership item, it is excepted from the 1990 agreement.

Finally, Plaintiff entered into another agreement with the IRS in 1989, an agreement that did address and settle partner-

---

**2.** Plaintiff's argument that the printed language excluding partnership items was not properly incorporated into the agreement is without merit. It is clearly the second page, and thus part of Form 870–AD, not a separate, unrelated document.

ship items related to tax years 1983 and 1984. *See* Exhibit NN, appended to Plaintiff's Supplemental Brief [Docket # 38] and Exhibit 1 to Supplemental Declaration of Thomas Cole [Docket # 37]. However, that agreement very specifically relates to Barrister Equipment Series 136, *not* Barrister Equipment Series 140, the partnership at issue in this case. Therefore, Plaintiff can find no refuge in the 1989 agreement.

Plaintiff has presented no evidence on which a reasonable fact-finder could conclude that the assessment for 1980 was related to anything other than a partnership item. Accordingly, this Court is without jurisdiction to consider Plaintiff's refund action with respect to that year, *Kaplan v. United States, supra.* Defendant's motion for summary judgment as to 1980 should be granted, and Plaintiff's motion denied.

### B.  1984 Tax Year

The 1996 assessments regarding Plaintiff's 1984 tax year is more problematic. Defendant's Exhibit 12 [appended to Docket # 27] is the Examination Closing Record for the tax year ending December 31, 1984. This is the only documentation that relates to 1984. Unlike Exhibit 11, relating to the 1980 tax year, Exhibit 12 contains no reference to Barrister Equipment or flow-throughs from Butler Properties. Indeed, comparing the 1980 assessment documents, Defendant concedes that "[w]e have been unable to locate a comparable document for the 1984 year." *Defendant's Opposition to Plaintiff's Motion for Summary Judgment,* p. 17 [Docket # 27]. Rather, Defendant argues that Plaintiff's situation in 1984 was "likely" the same as the plaintiffs in *Chimblo v. C.I.R., supra,* a case that involved the Barrister Equipment partnership:

> "*Chimblo* indicates that the Barrister Equipment Series Tax Court proceed-

ings related to the 1983 and 1984 tax years. *Chimblo,* 177 F.3d at 121–22. At the conclusion of that case, the IRS proposed deficiencies against the Chimblos, who were partners in another Barrister Equipment Series partnership, for 1984 and 1980, because the Chimblos had carried back losses from the 1983 or 1984 years back to the 1980 year. *Chimblo,* 177 F.3d at 122. *The same thing likely happened with Mr. Stoddard:* following the conclusion of the Barrister Tax Court Equipment Series Tax Court proceeding, adjustments were made to the Stoddard liability, which included the making of a new assessment for the 1984 year and the disallowance of a carryback for the 1980 year. Indeed, Mr. Stoddard's argument that the 1990 settlement agreement covered the 1980 year (even though this year is not on the settlement agreement) *may very well be* premised on the carrying back of a loss for the 1983 year (which may have been allowed by the 1990 settlement) to the 1980 year." (Emphasis added).

In a summary judgment motion, it is incumbent on the moving party to initially demonstrate the absence of a genuine dispute over material facts. *Celotex, supra,* 477 U.S. at 322–23, 106 S.Ct. 2548; *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 157, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970) ("As the moving party, respondent had the burden of showing the absence of a genuine issue as to any material fact, and for these purposes the material it lodged must be viewed in the light most favorable to the opposing party"); *Moldowan v. City of Warren,* 573 F.3d 309, 331 (6th Cir.2009) ("At the summary judgment stage, the moving party bears the initial burden of identifying those parts of the record that demonstrate the absence of any genuine issue of material fact").[3]

---

**3.**  If a moving party fails to meet this initial

burden, the non-moving party has no duty to

Exhibit 12, which contains absolutely no reference to partnership items, does not satisfy the Defendant's burden under Rule 56. Nor does Defendant's speculation that Plaintiff's situation in 1984 is "likely" similar to the plaintiffs in *Chimblo*, or that the settlement agreement "may very well be" premised on the carry-back of a 1984 partnership item. Moreover, Plaintiff has submitted as Exhibit AA, appended to his motion for summary judgment [Docket # 24], a transcript of his IRS records pertaining to tax year 1984, including certificates of assessments and payments. These records indicate that additional tax, along with interest and penalties, was assessed in 1996, but (consistent with Defendant's admission that there are no documents substantiating its claim that the assessments related to partnership items), there is no reference to Butler Properties or Barrister Equipment Series 140.

As discussed above, there is ample support for the Defendant's claim that the adjustments for 1980 involved partnership items, and therefore this Court is without jurisdiction under TEFRA. By contrast, there is little support, other than inferences derived from the *Chimblo* case, that the assessments for 1984 were related to Barrister, Butler, or any other partnership. If they were not, there is no TEFRA bar to this suit, and summary judgment for the Defendant is inappropriate.

### C. 1995 and 1998 to 2000 Tax Years

The assessments of penalties for tax years 1995, 1998, 1999 and 2000 [4] were based on Plaintiff's failure to make suffi-cient estimated tax installment payments. *See* 26 U.S.C. § 6654, which provides for the assessment of penalties where there is an underpayment of estimated taxes. Plaintiff seeks abatement of the penalties owing to the complex nature of his income and his inability to obtain timely and accurate reporting from his income sources, which number 155 items.

In April, 2002, Plaintiff filed an Offer in Compromise ("OIC") regarding liability for tax years 1995, 1998, 1999 and 2000.[5] On December 2, 2002, while the OIC was pending, the IRS applied a portion of Plaintiff's overpayment for the 2001 tax year to the assessments for 1995 and 1998 to 2000. On April 14, 2003, the IRS denied the OIC, stating:

"We are sorry but your offer is rejected because the taxes, penalties and interest are held to be legally due and an amount larger than the offer has been collected. We do not have authority to accept an offer in these circumstances."

*Plaintiff's Motion,* Exhibit M [Docket # 24].

Plaintiff argues that the Defendant's seizure and crediting of his 2001 overpayment to the assessments in question while an OIC was pending was improper. The Defendant relies on then-temporary regulation 26 C.F.R. § 301.7122–1(j), which provides, "Notwithstanding the evaluation and processing of an offer to compromise, the IRS may, in accordance with section 6402, credit any overpayments made by the taxpayer against a liability that is the subject of an offer to compromise and may offset such overpayments against other liabilities owed by the taxpayer to the extent authorized by section 6402."[6] Plaintiff counters

---

present countervailing evidence. Indeed, a court abuses its discretion if it grants a summary judgment motion where the moving party has not met its burden. *Hunter v. Caliber System, Inc.,* 220 F.3d 702, 726 (6th Cir. 2000).

**4.** The penalty for under payment of estimated taxes is deemed an "addition to tax" under 26 U.S.C. § 6654(a).

**5.** The OIC also included tax years 1980 and 1984.

**6.** This temporary regulation was in effect at

that the regulation is in conflict with 26 U.S.C. § 6331(k)(1)(A), which provides:

> **(1) Offer-in-compromise pending.**— No levy may be made under subsection (a) on the property or rights to property of any person with respect to any unpaid tax—
>
> **(A)** during the period that an offer-in-compromise by such person under section 7122 of such unpaid tax is pending with the Secretary.

Given this statutory bar on levies made during the pendency of an offer in compromise, Plaintiff argues that "the regulation is clearly beyond the legitimate rule making power of the IRS." *Plaintiff's Supplemental Brief,* pp. 3–4 [Docket #38]. Plaintiff's argument is based on an incomplete reading of the underlying statute, 26 U.S.C. § 6331(k).

In determining whether an agency exceeds its rule-making power, the first question is "whether Congress has directly spoken to the precise question at issue." *Chevron v. Natural Resources Defense Council, Inc.,* 467 U.S. 837, 842, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984). In analyzing whether Congress has directly spoken, the court "employ[s] 'the traditional tools of statutory construction.'" *Timex V.I. Inc. v. United States,* 157 F.3d 879, 882 (Fed.Cir. 1998) (*citing Chevron,* 467 U.S. at 843, n. 9, 104 S.Ct. 2778). These tools include the statute's plain text, structure, and legislative history. Because the regulation de-

rives from the IRS's power to collect taxes through offsets, as set forth in 26 U.S.C. § 6402, it is important to understand what § 6331(k) says about offsets. In this regard, § 6331(k)(3) states:

> **(3) Certain rules to apply.**—Rules similar to the rules of—
>
> **(A)** *paragraphs (3) and (4) of subsection (i),* and
>
> **(B)** except in the case of paragraph (2)(C), paragraph (5) of subsection (i), shall apply for purposes of this subsection. (Emphasis added).

The referenced Subsection (i) generally precludes levies during the pendency of a federal court action to recover a refund. However, § (i)(3)(B)(i) sets forth an exception to this rule:

> **(B) Certain levies.**—This subsection shall not apply to—
>
> **(i)** any levy to carry out an offset under section 6402.

Again, the plain language of a statute is a controlling factor. Because Paragraph (3)(B)(i) is explicitly incorporated into § 6331(k), it is clear that subparagraph (k) permits an offset even though an OIC is pending, and that the corresponding regulation is a statutorily permissible exercise of the IRS's rule-making power.[7]

■ On a visceral level, the idea that the IRS can swoop in and seize an overpayment while an OIC is pending, and then deny the OIC because the assessment

---

the time Plaintiff's OIC was submitted. It has since been replaced by a permanent regulation, 26 C.F.R. § 301.7122–1(g)(5), which contains the same language.

**7.** In his *Consolidated Reply to Defendant's Opposition to Plaintiff's Motion for Summary Judgment* [Docket #30], Plaintiff asks for damages pursuant to 26 U.S.C. §§ 7433(a) and (b), based on the application of the offset while an OIC was pending. Apart from the fact that this claim was not included in the complaint, it fails on its merits. Section

7433(a) provides a cause of action where "in connection with any collection of Federal tax with respect to a taxpayer, any officer or employee of the Internal Revenue Service recklessly or intentionally, or by reason of negligence disregards any provision of this title, or any regulation promulgated under this title. . . ." In this case, there was compliance with, not disregard of the applicable statutes and regulations. Moreover, no individual "officer or employee" of the IRS has been named as a Defendant.

has been paid in full, seems offensive. Whether or not it is equivalent to "grand larceny," as the Plaintiff suggests, the average fourth-grader would no doubt perceive it as unfair, at least in the colloquial sense. Nevertheless, Congress has spoken, and under the existing statutory and regulatory scheme, the IRS lawfully applied the Plaintiff's 2001 overpayment to the assessments in question. Plaintiff's remedy lies in this action for a refund.[8] The underlying question in this case is whether the Plaintiff does or does not owe the money, not whether the IRS played dirty pool in the way it collected the penalty.

In a court challenge to an addition to tax for underpayment of estimated tax, the IRS has the initial burden of production. 26 U.S.C. § 7491(c); *Rinn v. C.I.R.*, 2004 WL 2397144, *3 (U.S.Tax Ct., 2004). In this case, the Plaintiff does not dispute that the estimated tax was underpayed, and indeed, the Defendant has provided sufficient documentation to show an underpayment. Defendant has therefore satisfied its burden of production. The burden therefore shifts to the Plaintiff to show that the additions to tax were invalid. *Simpson v. C.I.R.*, 23 Fed.Appx. 425, 429 (6th Cir.2001), citing *Ledbetter v. Commissioner*, 837 F.2d 708, 711 (5th Cir.1988).

Plaintiff argues that the penalty/additions to tax should be abated under 26 U.S.C. § 6654(e)(3)(A), providing for no addition for underpayment of estimated tax where the failure is due to "unusual circumstances" and addition would be "against equity and good conscience." He contends that the nature of his income is extremely complex and that it is difficult for him to obtain information necessary to accurately estimate his tax liability. Plaintiff's accountant, Roger D. Steensma, has prepared an affidavit, appended to Plaintiff's Supplemental Brief [Docket # 38] as Exhibit QQ, stating, at ¶ 31:

> "Mr. Stoddard's income tax returns for each year in question presents, in my experience, the type of 'unusual circumstances' warranting abatement of the § 6654 penalty due to (a) the amount of income he receives, (b) the numerous sources of income and businesses in which he is a third party investor, and (c) that he is without input or control in providing timely financial reporting for nearly all of these sources of income and businesses."

It is important to note that while § 6654(e)(3)(A) provides for abatement in the case of "unusual circumstances," it does not permit abatement for "reasonable cause." Plaintiff concedes that a "reasonable cause" defense is unavailable to him. *See Plaintiff's Consolidated Reply*, p. 17 [Docket # 30]. In this regard, Plaintiff cites *Carlson v. United States*, 126 F.3d 915, 921 (7th Cir.1997), which in turn quotes a Treasury Regulation, 26 C.F.R. § 301.6651–1(c)(1), defining "reasonable cause" as follows:

> "Failure to pay will be considered to be due to reasonable cause to the extent that the taxpayer has made a satisfactory showing that he exercised ordinary business care and prudence in providing for payment of his tax liability and was nevertheless either unable to pay the tax

8. Plaintiff suggests that the overpayment should be returned to him and the OIC should be reinstated and reconsidered by the Commission. However, there would be two additional impediments to ordering the return of the seized overpayment prior to this Court's substantive finding that Plaintiff did not owe the additions to tax. First, the Plaintiff's request is in the nature of injunctive relief, which is proscribed by 26 U.S.C. § 7421(a). Secondly, a plaintiff cannot maintain a refund suit unless the tax has been paid. *See Flora v. United States*, 362 U.S. 145, 146–63, 80 S.Ct. 630, 4 L.Ed.2d 623 (1960); *Martin v. Commissioner*, 753 F.2d 1358, 1360 (6th Cir. 1985).

or would suffer an undue hardship .. if he paid on the due date."

While the Plaintiff does not claim (and the evidence does not show) that he was either unable to pay the estimated tax or that to do so would cause him undue hardship, his claim of "unusual circumstances," based on the complexity and numerosity of his sources of income and the difficulty in obtaining timely information from those sources, sounds very much like a claim that he "exercised ordinary business care and prudence," but was still unable to make the payments. In that sense, his claim of "unusual circumstances" is a claim of "reasonable cause" in disguise.

The only authority Plaintiff cites to support his claim of unusual circumstances is an unpublished bankruptcy court decision from Louisiana, *In re Sims,* 1991 WL 322994 (Bkrtcy.E.D.La., 1991). The court described Sims' situation as follows:

"During the years at issue, the Debtor was an investor in a number of business ventures and partnerships. The tax reporting for those business entities was handled by individuals besides the Debtor or his accountant. As reflected in the testimony at trial, on many occasions neither the Debtor nor his accountant could obtain tax reporting information to timely file a tax return. The Debtor filed extensions for some years, but much of the needed information was not available by the extended filing due dates." *Id.* at *1.

Finding these to be "unusual circumstances" under § 6654(e)(3)(A), the court held:

"The facts and evidence presented above in this case indicate that neither the Debtor nor his accountant had any control, power, or ability to secure the proper documents and financial information needed to prepare the Debtor's income tax returns for the year in question. This Court holds that such inability to obtain needed information constitutes an unusual circumstance and the imposition of an additional tax under 26 U.S.C. § 6654 would be against equity and good conscience." *Id.* at *2

Apart from the fact that *Sims* has no precedential value, I disagree with its conclusion regarding what constitutes "unusual circumstances." First, as noted above, to allow the complexity of a taxpayer's income and the difficulty of obtaining information to constitute "unusual circumstances" would be to effectively import a "reasonable cause" standard into § 6654(e)(3)(A). "[N]either reasonable cause nor good faith is a valid defense against the [§ 6654] penalty." *Sawyer v. United States,* 426 F.Supp. 572, 574 (D.C.La.1977). The Plaintiff's difficulty in obtaining information is no more unusual than what might be experienced by any other taxpayer who has investment income from multiple sources. While it could be said that the Plaintiff's underpayment of his estimated tax was due to *extenuating* circumstances, that is insufficient under § 6654(e)(3)(A). *See Estate of Ruben v. CIR,* 33 T.C. 1071, 1072 (U.S. Tax Court, 1960) ("This section has no provision relating to reasonable cause and lack of willful neglect. It is mandatory and extenuating circumstances are irrelevant"); *Gurtman v. United States,* 1973 WL 574, *4 (D.N.J. 1973) (unpublished) ("[T]here can be no doubt that Congress explicitly defined all exceptions to the operation of the addition to tax provision of Section 6654(a), and that no exception based upon reasonable cause or other mitigating or extenuating circumstances may be fairly implied.").

More generally, to accept the *Sims* view of what constitutes "unusual circumstances" would create a double standard, whereby taxpayers who derive an extremely large income from a complex network of investments and outside sources are given

an advantage not enjoyed by those operating under more modest circumstances.

For these reasons, Defendant is entitled to summary judgment as to the assessments for 1995 and 1998 to 2000.

## IV. CONCLUSION

I recommend as follows:

(1) That Plaintiff's motion for summary judgment [Docket # 24] be DENIED.

(2) That Defendant's motion for summary judgment [Docket # 27] be GRANTED IN PART AND DENIED IN PART. Specifically, regarding the assessments for tax years 1980, 1995, 1998, 1999 and 2000, the motion should be GRANTED, and those claims DISMISSED. Regarding the assessments for the 1984 tax year, the Defendant's motion should be DENIED.

Any objections to this Report and Recommendation must be filed within ten (10) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and E.D. Mich. LR 72.1(d)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *Howard v. Secretary of HHS,* 932 F.2d 505 (6th Cir.1991); *United States v. Walters,* 638 F.2d 947 (6th Cir.1981). Filing of objections which raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Secretary of HHS,* 931 F.2d 390, 401 (6th Cir.1991); *Smith v. Detroit Fed'n of Teachers Local 231,* 829 F.2d 1370, 1373 (6th Cir.1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within ten (10) days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be not more than twenty (20) pages in length unless by motion and order such page limit is extended by the court. The response shall address specifically, and in the same order raised, each issue contained within the objections.